J-S26029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.B.P., GUARDIAN | No. 2767 EDA 2015 |

Appeal from the Order Dated August 3, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-DP-0000839-2015

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 04, 2016**

R.B.P. ("Appellant") appeals from the order of adjudication and disposition in the Philadelphia County Court of Common Pleas with respect to the female child, K.L. ("Child"), born in March of 2010.  Upon careful review, we affirm.

We summarize the factual and procedural history as follows.  Child has resided with Appellant, and Appellant's adult daughter, L.B., her entire life.  N.T., 6/3/15, at 26-27.  Appellant was granted "primary [physical] and sole

_____

[*] Retired Senior Judge assigned to the Superior Court.

legal custody" of Child on April 3, 2013.[1]  Trial Court Opinion, 10/26/15, at 1.  On March 19, 2015, the City of Philadelphia Department of Human Services ("DHS") received a report alleging that Appellant inappropriately touched Child.  *Id.*; N.T., 6/3/15, at 4.  Jamilla Brown, the DHS sex abuse investigator, interviewed Child, then age five, who indicated that both Appellant and L.B. inappropriately touched her on her "tutu," which she subsequently identified, by pointing to a picture, as her vagina.  N.T., 6/3/15, at 5-7.  Appellant indicated to DHS that Child "had been making similar comments for some time."  Trial Court Opinion, 10/26/15, at 1.

Following the report to DHS, Appellant took Child to her primary care physician and, upon the recommendation of that doctor, to the Children's Hospital of Philadelphia ("CHOP").  N.T., 6/3/15, at 8.  While at CHOP, Child indicated, "Mama and Dada had touched her."[2]  Trial Court Opinion, 10/26/15, at 1.  The report from CHOP alleged that Appellant stated Child, "had witnessed L.B. engaging in sexual acts with her paramour[,] and that L.B. had watched a sexually explicit movie in the presence of [Child]."  *Id.* at 2 (unpaginated); N.T., 6/3/15, at Exhibit CA-1, at 13.

---

[1] The certified record reveals that Child's biological mother is incarcerated. N.T., 6/3/15, at 6.  The record does not reveal any information about Child's biological father.  Neither of Child's parents is a party to this appeal.

[2] Child refers to Appellant as "Mama" and to L.B. as "Dada."  Trial Court Opinion, 10/26/15, at 1.

By order of protective custody, Child was placed in foster care on March 31, 2015. Child was temporarily committed to DHS by order dated April 2, 2015. On April 7, 2015, DHS filed a dependency petition.

A hearing commenced on June 3, 2015, during which Douglas Earl, Esquire, represented Appellant. DHS presented the testimony of Jamilla Brown, the DHS sex abuse investigator, who testified that, upon investigation, the allegations against Appellant were unfounded. N.T., 6/3/15, at 11. Further, DHS presented the testimony of D.L., Child's foster parent. Appellant did not present any testimonial or documentary evidence.

Thereafter, the hearing was continued to July 7, 2015, on which date Attorney Earl informed the court that Appellant had retained new counsel, Danny Elmore, Esquire. Trial Court Opinion, 10/26/15, at 2 (unpaginated). The trial court continued the case to August 3, 2015, "without further action, because [Attorney] Elmore was not informed by [Appellant] or [Attorney] Earl that the case was mid-trial." *Id.* Significantly, by order dated July 7, 2015, the trial court attached Attorney Earl for the hearing on August 3, 2015.

On August 3, 2015, Appellant appeared at the hearing with Attorneys Earl and Elmore. At the beginning of the proceeding, Attorney Earl requested on the record in open court to be excused from the hearing because Appellant had terminated his representation. N.T., 8/3/15, at 4. Before the court ruled on Attorney Earl's request or received additional

evidence in the dependency case, it requested a sidebar conversation with all counsel. Following the sidebar conversation, which occurred off-the-record, the court stated as follows:

> THE COURT: [ ] [J]ust so the record is clear, . . . Mr. Earl, based upon that sidebar conversation, [is] there currently . . . an agreement?
>
> . . .
>
> THE COURT: [Do] [y]ou want to step out with [Appellant] for a minute?
>
> MR. EARL: Yes, may I?
>
> . . .

*Id.* at 5-6. After Attorney Earl consulted with Appellant, the trial court stated on the record in open court to Attorney Earl, in part:

> THE COURT: [I]f you wanted the witnesses to testify, so be it, but I've given you some time to consult with [Appellant]. Either it's an agreement[,] or it's a trial. . . .
>
> And . . . Just so the record is clear, we're in mid-trial.

*Id.* at 6. Attorney Earl responded, "she agrees . . . with the consensual agreement amongst the attorneys." *Id.* at 6-7. Thereafter, the trial court excused Mr. Earl and received no additional evidence. *Id.* at 7.

By order dated August 3, 2015, the trial court adjudicated Child dependent and continued her placement in foster care. On September 2, 2015, Appellant filed *pro se* a notice of appeal and a concise statement of

errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

On October 26, 2015, the trial court filed a Rule 1925(a) opinion.

On appeal, Appellant raises two issues for our review:

A. Did the court error in having an attorney whose services have been terminated to continue representing Appellant?

B. Did the court error in finding [Child] dependent and commit[ting] [Child] to [DHS]?

Mother's Brief at 2.[4]

Our standard of review is well-settled:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Section 6302 of the Juvenile Act defines a "dependent child" as a child

who, in relevant part:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk. . . .

---

[3] Although Appellant filed *pro se* a notice of appeal and a concise statement, Appellant submitted a counseled brief. Specifically, Appellant is represented on appeal by Jennifer A. Santiago, Esquire.

[4] We have re-ordered Appellant's issues for ease of disposition.

42 Pa.C.S.A. § 6302 (1).

> In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court stated:
>
> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *Id.*

> This Court further explained:
>
> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

*In re G.*, 845 A.2d at 873 (internal quotations and citations omitted).

In her first issue, Appellant asserts, "After being terminated, [Attorney] Earl continued to represent Appellant and entered into a stipulation agreeing to an adjudication of dependency and continued separation from the child." Appellant's Brief at 9. Appellant argues the trial court erred in accepting the representation of Attorney Earl on August 3, 2015, whose representation she had terminated. She asserts "that[,] had a trial continued with the correct attorney, there would have been no

stipulation for the court to rely on when it determined that the child was dependent." *Id.*

We note, "[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). Rule 1925 waiver standards apply in the family law context. *See In re L.M.*, 923 A.2d 505 (Pa. Super. 2007) (applying *Lord* standard to appeal from order terminating parental rights); *In re C.P.*, 901 A.2d 516 (Pa. Super. 2006) (holding mother waived claim challenging termination of her parental rights because it was not included in her concise statement); *In re C.M.*, 882 A.2d 507 (Pa. Super. 2005) (holding father waived issue regarding goal change when he failed to specify issue in his concise statement).

Instantly, in her Rule 1925(a)(2)(i) statement, Appellant did not assert any error by the trial court with respect to accepting the representation of Attorney Earl on August 3, 2015, as it related to the stipulation entered into by counsel. Therefore, this issue is waived for our review. *See In re L.M.*, *supra*; *In re C.P.*, *supra*; *In re C.M.*, *supra*.

It follows that, to the extent Appellant acknowledges in her brief that she, "entered into a stipulation agreeing to an adjudication of dependency and continued separation from the child[,]" we reject her second issue on appeal that the court erred in adjudicating Child dependent, and, in the

alternative, erred in maintaining DHS's physical custody of Child. Appellant's Brief at 9.

Even if Appellant did not stipulate to the subject adjudication and disposition, we reject her argument that the record evidence does not support the order. Specifically, Appellant asserts (1) the court found that she did not commit sexual abuse against Child; and (2) her adult daughter, L.B., no longer resides with her.

Following the stipulation entered into by counsel on August 3, 2015, discussed above, the court nevertheless stated on the record in open court, "[b]ased upon the previous testimony, I do find by clear and convincing evidence that the child is currently without proper parental care and control. She therefore [will be] adjudicated dependent. We're going [to] commit the child to [DHS]." N.T., 8/3/15, at 7. The court subsequently explained, in part:

> [THE COURT]: I want the record to be clear that the allegations, with respect to [Appellant], were unfounded. . . .
>
> [ ] Do I believe something happened? Yes. Do I think it was with you [Appellant]? No. Based upon the testimony, . . . was that your daughter that lived with you?
>
> [APPELLANT]: She did, but I put her out.
>
> [THE COURT]: I suspect it was your daughter. I do remember that. That testimony was clear that you put her out. However, with whatever happened, this young child has a lot of issues, now. So we have to deal with those issues before we send her . . . back [to Appellant]. . . .

*Id.* at 8-9. The testimonial evidence supports the court's findings.

Jamilla Brown, the DHS sex abuse investigator, testified that Child, "is very impulsive[] [and] could benefit from mental health services." N.T., 6/3/15, at 14. Further, Ms. Brown acknowledged on cross-examination by the Child Advocate that Appellant told her that Child had been uncontrollable at home, and that Child threw plates, dishes, and food. *See id.* at 25-27.

In addition, D.L., the foster parent, testified concerning Child's behavior as follows:

Q. [W]hat have been your observations or have you had any observations with Child while out in public with her?

A. She came to me late one night, so the next day I had to take her out shopping to buy her clothing, and, so, I didn't know anything about what had happened. . . . [W]e were in the store where there [was a] women['s] clothing store[.] . . . [A]s soon as we walked into the store there's mannequins with breasts protruding through them, and she was running over touching all the breasts on each mannequin, and I didn't expect that or know a child to do that, and she kept doing it, so, I ended [up] trying to get her to stay next to me, and not go over to the mannequins at all, but she kept getting away from me, and kept wanting to touch the breasts. And so, I said why [are] you doing that? And she didn't answer me, she just kind of. . . Put her head down, and kind of got into a froze[n] position[.] . . . [A]s soon as I stopped paying attention to her, she'd run away from me again, and go back to the breasts on the mannequins.

. . .

Q. [H]ave you noticed anything with regard to [Child] playing with dolls or action figures?

A. She does some things with action figures that [are] offensive.

Q. What does she do?

A. She would position the doll in a sitting position, one doll will be in a sitting position, and the other doll head was between the

legs, and I saw her doing that a couple of times, and every time she'd do it I'd take the dolls back away from her.

*Id.* at 31-33.

Based upon the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in concluding that Child presently, "is without proper parental care and control, subsistence, education as required by law, or other care or control necessary for h[er] physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302 (1). Further, we discern no abuse of discretion by the court in concluding that Child's welfare necessitates maintaining her placement in foster care. Accordingly, for the reasons stated above, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016

- 10 -