**In re G., T.**

**Appeal of S.S.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed March 15, 2004.

Sharon M. Biasca, Pittsburgh, for appellant.

J. Marie Webb, Pittsburgh, for G., T., appellee.

Lowell E. Burket, Pittsburgh, for G., C., appellee.

Wendy Kobee, Pittsburgh, Allegheny County Children and Youth Families, appellee.

Before: LALLY–GREEN, MONTEMURO * and JOHNSON, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal by S.S. (Mother) from the Order entered May 9, 2003, in the Allegheny County Court of Common Pleas, adjudicating her eldest daughter, T.G., dependent, and continuing the child's placement in the home of her maternal grandmother. T.G.'s younger sister was adjudicated dependent at the same time, but Mother has not challenged that ruling.

¶ 2 In July of 2002, Mother took her younger daughter, at that time 10 months old, to the out-patient clinic at Children's Hospital in Pittsburgh for a routine medical check-up. She had not been seen by a doctor for seven months. The examining physician was very concerned about the large size of the child's head,[1] as well as possible neurological damage since the child's pupils were not constricting as they should have been.[2] Consequently, the child was sent to the emergency room where she underwent a head CT scan. The CT scan showed severe abnormalities, including brain damage. Despite undergoing neurosurgery to drain fluid on the brain, however, the child has not improved; she has suffered permanent brain damage and is not expected to walk. (*Id.* at 39–40, 47). Mother admitted that she had noticed a problem with the child in April, *i.e.*, large size head and developmental delay, but waited until she had medical insurance to take the child to a doctor.

¶ 3 In August of 2002, both the injured child and T.G. were sent, apparently with the consent of the parents, to live with their maternal grandmother. A dependency petition regarding the children was filed in October of 2002. The younger child's injury, seemingly caused by shaken baby syndrome, was investigated by both the Pittsburgh Police Department and the Allegheny County Office of Children, Youth and Families (CYF). At the May 9, 2003, dependency hearing, Detective Barbara Goodwin testified that the child's 9 year old cousin, S.B., claimed responsibility for

---

* Retired Justice assigned to Superior Court.

1. Her "head circumference was over two times the size that it should have been." (N.T., 5/9/03, at 54).

2. The child also had a burn injury on her abdomen, which Mother claimed was the result of a cooking accident. She also claimed that she treated the injury at home because she did not have medical insurance. *See* N.T., 5/9/03, at 5–6.

the child's injury, but then immediately recanted. S.B. was subsequently adjudicated dependent based on her admission.[3] S.B.'s 6 year old brother also admitted to having hit the baby in her head with his hands and toys. Detective Goodwin subsequently filed charges of reckless endangerment and endangering the welfare of a child against both parents based on their failure to seek prompt medical attention. CYF intake worker Steve Beshenich testified that his investigation led to a determination that the allegations of mistreatment against the parents were "unfounded, because I couldn't determine that they were the perpetrators." (N.T., 5/9/03, at 78). However, Beshenich filed dependency petitions based on the parents' failure to seek prompt medical care. There was also some testimony that T.G. has a severe "lazy eye" which requires corrective lenses. Beshenich testified that he did not notice T.G. wearing glasses during his investigation, but later saw pictures of her with glasses. (*Id.* at 81).

¶ 4 By Order dated May 9, 2003, the trial court adjudicated both children dependent and continued their placement with their maternal grandmother. This timely appeal followed.[4]

¶ 5 Mother challenges both the trial court's dependency adjudication and its determination that removal of T.G. from the home was clearly necessary. Although our scope of review in dependency appeals is broad, we must accept those factual findings of the trial court that are supported by the record, and defer to the court's credibility determinations. *In Re*

S.B., 833 A.2d 1116, 1117 (Pa.Super.2003). However, we are not bound by the inferences, deductions, and conclusions the trial court draws from those facts. *Id.*

A "dependent child" is defined, in relevant part, as one who is "without proper parental care or control, subsistence, education as required by law or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S.A. § 6302. "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d [614,] 619 [(Pa.Super.2002) (*en banc*)].

*In re M.W.*, 2004 Pa.Super. 15, ¶ 6 (Pa.Super.2004). The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency. *In Interest of J.M.*, 438 Pa.Super. 409, 652 A.2d 877, 880 (1995), *appeal denied*, 541 Pa. 640, 663 A.2d 692 (1995). Moreover, a child should not be found to be dependent merely because a sibling has been adjudicated dependent. *Id.* at 881.

---

3. Dr. Michelle Zimmer, a pediatrician in the Child Advocacy Center and Child Development Unit at Children's Hospital testified that, in her opinion, a 9 year old would not have been capable of causing the injury suffered by T.G.'s sibling. She explained, "That really needs to be done in quite a forceful way, and

in my opinion, a nine-year-old wouldn't be able to generate that kind of force or sustain shaking long enough to cause those injuries." (N.T., 5/9/03, at 70).

4. The children's father is not a party to the appeal.

¶ 6 Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. *Id.* " 'Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.' " *Id.* (quoting *In re S.M.*, 418 Pa.Super. 359, 614 A.2d 312, 314 (1992)).

¶ 7 First, Mother argues that the evidence was insufficient to support a finding that T.G. is a dependent child. She contends that the trial court's factual determination that the parents delayed medical care to both children when they lacked health insurance is not supported by the record, and that, without a specific finding of abuse or aggravated circumstances, the court's adjudication, based solely on prognostic evidence, cannot stand.

¶ 8 Although the trial court determined that Mother and Father demonstrated "some medical neglect" with respect to T.G., the court also noted that that neglect "in and of itself is not the basis for adjudication for [T.G.]" (Trial Ct. Op. at 7) (quoting N.T., 5/9/03 at 105). Rather, the court explained that

> although T.G. had suffered no known physical mistreatment in the care of her parents, she was nonetheless without proper parental care as evidenced by her parents' extremely poor judgment in delaying medical attention to both children for a period during which the family lacked health insurance.... At best, T.G.'s parents failed to properly parent their children when they determined that they would not seek medical care for them until they had obtained health insurance; at worst, the parents may have played a proactive role in the dis-

abling physical abuse suffered by T.G's younger sister.

(*Id.*).

¶ 9 Contrary to Mother's contention, we find the trial court's conclusion to be supported by the testimony. Neither Mother nor Father testified during the dependency hearing because of the outstanding criminal charges. However, Detective Goodwin testified that when she interviewed Mother and Father about the injury to the younger daughter, both of them told her that they did not seek treatment because they did not have medical insurance. Moreover, Mother admitted to both Detective Goodwin and Dr. Zimmer that she noticed as early as April that her daughter's head was beginning to swell. Therefore, we find it logical for the court to conclude that the parents made a conscious decision to forgo medical care for either child, regardless of the circumstances, until they had medical insurance. We agree that this not only "evidenced extremely poor judgment" (Trial Ct. Op. at 7), but also put **both** children at risk. The fact that T.G. suffered no adverse effects from this decision is both irrelevant and fortuitous. It is clear, however, that her sister was not so lucky. Indeed, Dr. Zimmer testified that had the child received prompt medical care, she would have experienced less dead brain tissue, and a more positive prognosis over time. (N.T., 5/9/03, at 46). We find the trial court's concern "about the environment that both of these children are in or have been in, and the parents' lack of knowledge or awareness of ... their medical needs[,]" justified. (*Id.* at 106).

¶ 10 This Court's recent decision in *In re M.W.*, *supra*, is analogous. In *M.W.*, the mother of six children appealed the trial court's order adjudicating five of the children dependent. The sixth child, who was not involved in the appeal, had been sexu-

ally abused by the father. The mother argued that the court's dependency adjudication was in error since there was no evidence that the father had abused or would abuse the five other children; therefore, the only child placed at risk by unsupervised contact with the father was the one he had previously abused and whose dependency was not challenged.

¶ 11 We found, however, that the recent amendments to the Juvenile Act evidenced a renewed sensitivity to the safety and emotional well-being of children who, although not abused themselves, have a sibling who has been physically or sexually abused at the hand of a family member. We explained,

> In our view, the Juvenile Act properly takes into consideration the sense of vulnerability, fear, and helplessness that siblings may feel when living in an environment where their brother or sister has been sexually abused by one parent, and the other parent (*i.e.*, the other parent who has a duty to protect the emotional welfare of the children) has taken inadequate steps to stop it. In other words, the focus is not on whether the other siblings are actually at risk for sexual abuse themselves. Rather, the key question if whether the siblings fit the broader definition of lacking "proper parental care or control ... necessary for his physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302. In our view, it is within the trial court's discretion to determine that siblings of sexually abused children fit that definition, even if there is no evidence that the siblings themselves will be sexually abused.

*Id.* at ¶ 8.

¶ 12 We find the same to be true here. It is of no moment that the "abuse" in the present case is parental neglect of T.G.'s sister. The Juvenile Act and *M.W.* allow us to assume that any medical problem T.G. might have developed would have been similarly ignored. The trial court determined that T.G. was lacking proper parental care and control because her parents lacked knowledge and/or awareness of her sister's obvious and serious medical needs. We find no abuse of discretion.

¶ 13 Next, Mother contends that the court erred in removing T.G. from her home when the separation was not clearly necessary. Mother emphasizes that she has fully cooperated with both the police and CYF. Indeed, both CYF caseworkers who have been involved with the family testified that they had no reports of any problems during Mother's visitations with the children. However, CYF recommended that T.G., who was only 4 years old at the time of the hearing, remain with the maternal grandmother pending psychological evaluations of the parents. Considering the severe, debilitating injury T.G.'s sister sustained and which her parents, for whatever reason, failed to address, we find no reason to disturb the trial court's placement.

¶ 14 Order affirmed.

¶ 15 Appellee's Application to Suppress Brief of Appellant is hereby DENIED.