J-S37018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF C.B., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: C.B., SR.; FATHER | |
| | No. 264 MDA 2014 |

Appeal from the Order Dated January 22, 2014
In the Court of Common Pleas of Berks County
Juvenile Division at No: CP-06-DP-0000060-2010

| | |
|---|---|
| IN THE INTEREST OF A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: C.B., SR.; FATHER | |
| | No. 265 MDA 2014 |

Appeal from the Order Dated January 22, 2014
In the Court of Common Pleas of Berks County
Juvenile Division at No: CP-06-DP-0000046-2010

BEFORE: LAZARUS, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 01, 2014**

C.B., Sr. ("Father") appeals from the orders dated January 22, 2014 in the Juvenile Division of the Court of Court of Common Pleas of Berks County adjudicating as dependent his minor son, C.B., Jr. ("Son") and his minor

daughter, A.B. ("Daughter"), collectively "the minor children."[1]   After considered review, we affirm.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court summarized the procedural history of this case as follows:

> This family, including Father, [Mother], the minor children, and their half-sibling, D.J., has an extensive history with Berks County Children and Youth Services (hereinafter "BCCYS"). The minor children were previously in foster care from April 1, 2010, until May 8, 2012. The children were returned to Mother's care in May 2012 and dependency was terminated in March 2013 based on Mother's compliance with services, including Mother's demonstrated sobriety and cooperation with substance abuse treatment. Unfortunately, less than a year and a half after their return to Mother's care, BCCYS began to receive reports that Mother had relapsed and disengaged from substance abuse treatment. After Mother missed two scheduled urine screens and tested positive on January 10, 2014, BCCYS petitioned for and was granted emergency custody of the minor children on January 13, 2014. During the entirety of BCCYS' involvement, including two years while the minor children were in foster care, Father has been largely uncooperative with BCCYS and court-ordered services.
>
> BCCYS filed petitions on January 15, 2014, requesting that the minor children be declared dependent. The Court held a detention hearing on January 17, 2014, and, at the conclusion thereof, determined that the minor children should remain in foster care until the adjudicatory and dispositional hearing on January 22, 2014. Upon the agreement of the parties, the Court

_____

[1] C.B., Jr. (d/o/b 1/18/07) and A.B. (d/o/b 12/8/09) are the children of Father and J.L. ("Mother"). Mother also has a third child, D.J. (d/o/b 3/16/12), with H.J. Notes of Testimony ("N.T.") Detention Hearing, 1/17/14 at 7. The trial court issued an order and disposition for each child on January 22, 2014. The orders were entered on January 27, 2014. Father's appeal addresses the orders with respect to Son and Daughter. Mother has not filed an appeal from any of the trial court's orders. The adjudication and disposition with respect to D.J. are not before this Court in this appeal.

incorporated the testimony from the detention hearing into the dependency hearing. At the conclusion thereof, this Court found the children to be without the necessary care and control and that it was within their best interest to be removed from Mother's care. Therefore, the Court entered orders declaring the minor children dependent and transferring legal custody to BCCYS for placement purposes.

Trial Court Opinion ("T.C.O."), 3/10/14 at 1-2 (references to notes of testimony and court documents omitted).

On February 6, Father filed timely appeals, which we have consolidated *sua sponte,* and raised four issues in his Rule 1925(b) statement of matters complained of on appeal, the same four issues he asks this Court to consider on appeal:

1. Did the lower court err by finding said children to be dependent?

2. Did the lower court err by taking said children under the care of the court and placing them into foster care?

3. Did petitioners establish by clear and convincing evidence that said children were dependent and should be placed into foster care?

4. Was the evidence presented by petitioners insufficient to support the honorable court's decision to find said children dependent and place them into foster care?

Father's Brief at 1.[2]

_____

[2] We remind counsel for Father of the requirements for matters to be contained in an appellant's brief under Pa.R.A.P. 2111(a), including the statement of jurisdiction, the orders in question, and the statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Pa.R.A.P. 2111(a)(1), (a)(2), (a)(11) and (d).

Father suggests that his first and second issues are substantively related and that his third and fourth issues are also substantively related. Father's Brief at 6 and 9. Consequently, Father combines his arguments into two parts, the first considering issues one and two and the second addressing issues three and four. Father's Brief at 6-8 and 9-11. The trial court, on the other hand, determined that the four issues identified in Father's 1925(b) statement could be summarized in one argument:

> Father argues that the Court erred in declaring the minor children dependent and transferring legal custody to BCCYS for placement purposes. Father contends that the evidence presented by BCCYS was insufficient to show that the minor children were without the proper care, control or subsistence necessary for their physical, mental and emotional health and that foster care [was] **not** [] the least restrictive placement to meet those needs.

T.C.O. at 3 (emphasis in original). We agree with the trial court that the four issues are so interrelated that they warrant unified discussion and we shall conduct our review accordingly.

Our Supreme Court set forth the standard of review for dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

This Court has explained:

> Dependency matters are governed by the Juvenile Act, 42 Pa.C.S.A. § 6301, et seq.
>
> A "dependent child" is defined, in relevant part, as one who is without proper parental care or control, subsistence, education as required by law or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk. The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.
>
> The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency.

*In re E.B.*, 83 A.3d 426, 431 (Pa. Super. 2013) (citing *In re T., G. (Appeal of S.S.)*, 845 A.2d 870, 872 (Pa. Super. 2004) and 42 Pa.C.S.A. § 6302 (definition of dependent child)).[3]

The trial court described Father's challenge to the court's finding of dependency as "unreasonable." T.C.O. at 4. In support of that conclusion, the trial court provided the following excerpt from the dependency hearing testimony:

| The Court: | Anyone that doesn't agree with that? Now, a fair reading of everything—and just tell me if I'm not being fair here. |
| --- | --- |

_____

[3] Pursuant to 42 Pa.C.S.A § 6302(1), the finding of lack of proper parental care or control may be based on conduct that includes "evidence of the parent's . . . use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk." *Id.*

[H.J.] can't take the children right now. Mom cannot take the children right now. And [Father] is not in a position to care for the children. Does everyone acknowledge that?

[Father's counsel]:     Yes.

[Mother's counsel]:     Yes.

The Court:     Everyone seems to be shaking their heads up and down. So therefore they are dependent children. I mean, does anyone really dispute the dependency aspect of these proceedings at this point in time?

[Mother's counsel]:     No, not on behalf of my client.

[Father's counsel]:     As far as the parents are concerned, the kids would be dependent but there is, we think, [a] ready and willing relative.

T.C.O. at 4 (quoting N.T. Dependency Hearing, 1/22/14, at 6-7).[4]

The trial court concluded that Father waived any challenge to the determination of dependency by acknowledging the minor children would be dependent with respect to the parents, but suggested Father wasn't challenging the dependency finding as much as he was challenging the dispositional aspects of the trial court's ruling, placing the minor children in

_____

[4] H.J., who was incarcerated at the time of the dependency hearing, testified that he was not an appropriate resource for the children as of the time of the hearing. N.T. Dependency Hearing, 1/22/14, at 6. Mother acknowledged she started using heroin again in the summer of 2013 and had used heroin as recently as January 9, 2014. N.T. Detention Hearing, 1/17/14, at 9-10; 27-28. Father's counsel stipulated that Father is a heroin addict. N.T. Detention Hearing, 1/17/14, at 50.

foster care rather than with the "ready and willing relative," *i.e.*, Father's mother ("Paternal Grandmother"). T.C.O. at 4-5. We conclude that the trial court's finding of "waiver" was a misnomer at best or harmless error at worst because the trial court *did* consider Paternal Grandmother as an alternative to designating the minor children dependent. Further, the trial court considered placing the minor children with Paternal Grandmother rather than in foster care.

At this juncture, it is appropriate to address Paternal Grandmother's role in these proceedings. Father contends the trial court used Paternal Grandmother's lack of party status to her detriment and that, despite the participation of Paternal Grandmother and her counsel, "Paternal Grandmother was not afforded a full opportunity to present evidence or represent herself as a party." Father's Brief at 8. While Paternal Grandmother has not claimed party status and, in fact, has not filed any documents with the trial court claiming party status or seeking to intervene in the dependency proceedings, she did attend the detention hearing and offered testimony. N.T. Detention Hearing, 1/17/14, at 34-55. Further, her counsel presented argument at the dependency hearing. N.T. Dependency Hearing, 1/22/14, 7-11.

At the detention hearing, Mother was asked who was caring for the minor children from May of 2012, when they were returned to her custody, and January 10, 2014, when she took them to Paternal Grandmother's

- 7 -

home.[5]  Mother responded, "I was, and their grandmother."  N.T. Detention Hearing, 1/17/14, at 9.[6]  Mother also testified that she took Son to Paternal Grandmother's house in June or July of 2013 because Son "wanted to spend the summer at his grandmom's home."  *Id.* at 13.  Daughter and D.J. would go to Paternal Grandmother's home "[s]ometimes two, three days a week. And [Daughter] would come and sleep overnight, sometimes stay an entire weekend."  *Id.* at 36.  Paternal Grandmother testified that Son had been living in her home for "eleventh months" or since "the beginning maybe of April" or "definitely May."  *Id.* at 34-35.  There was no suggestion that Daughter lived with Paternal Grandmother at any time prior to January 10, 2014.

Son was in first grade at the time of the detention hearing.  When asked where the officials at Son's school thought Son lived, Paternal Grandmother replied, "They never asked because the child is in the mother's

---

[5] On January 10, 2014, Mother took Son, Daughter, and D.J. to Paternal Grandmother's house with a handwritten, notarized note stating Mother was "signing over temporary custody of [her] three children" to Paternal Grandmother.  "Time of return to mother's care will be determined at a later date."  N.T. Detention Hearing, Exhibit 1.

[6] There is no suggestion in the record that the minor children ever lived with Father or that he provided any level of care to them from May of 2012 until January 2014.  He did visit with them at Paternal Grandmother's home, N.T. Detention Hearing, 1/17/14, at 13, and on at least one occasion in 2013 drove Paternal Grandmother's car with Daughter as a passenger, as evidenced by the traffic citation issued to Father for failing to have Daughter properly restrained in the vehicle.  N.T. Dependency Hearing, 1/22/14, Exhibit 1.

primary care. They never asked for the father's address. They only asked for the mother's. She's the one that registered him this year." **Id.** at 40. When Mother was asked if she ever told anyone at BCCYS that she had given custody of Son to Paternal Grandmother, Mother responded, "I didn't say that I gave custody because I did not legally, you know, at that point give custody, but I said – I had told him before, yes, that [Son] most of the time was at his grandmother's house, he stayed at his grandmother's house." **Id.** at 16-17.

Counsel for BCCYS noted:

I was attempting to [] argue why grandmother cannot care for the children. Mother's own testimony, although she was letting [Son] stay with grandmother, [Mother] was not there and she didn't legally give her custody until she came up with a positive urine screen on January 10th.

Other than that, our understanding he would stay [at Paternal Grandmother's house] because it was easier to get him back and forth to school. So we would argue that . . . mother was the one who had custody and that this whole façade or whatever you want to call it was really just done in an effort to avoid [BCCYS] from taking custody.

* * *

[E]ven if this Court does deem that grandmother was the one that was caring for [Son], [] removal is still appropriate based on the fact that grandmother was not protecting him from father, was allowing unsupervised contact with father; that father was still residing in the home; that grandmother was deemed an unfit caretaker; that nothing [has] changed really since 2011; that grandmother continues to be dishonest; that grandmother was the whole part of the safety plan that she was supposed to report if mother started using and step in and help the children.

N.T. Dependency Hearing, 1/22/14, at 9-11.

As reflected in its opinion, the trial court considered Grandmother's role in the care of the minor children at the time the trial court adjudicated them dependent and as a resource for the minor children following that adjudication. The court stated:

> At these hearings, the Court looked closely at Paternal Grandmother as a potential resource for the children and an alternative to foster care. However, after close inspection, the Court concluded that Paternal Grandmother was not an appropriate caregiver. When the children were previously in foster care, Paternal Grandmother had been denied as a kinship resource. In fact, when the children were first placed in foster care in 2010, [Son] was removed from Paternal Grandmother's care. One of the main concerns was that Paternal Grandmother allowed Mother and Father to have unsupervised contact with the children. This is particularly concerning in light of Paternal Grandmother's inability or unwillingness to protect the children from Mother and Father when they are under the influence. At the detention hearing Mother testified that she informed Paternal Grandmother of her relapse. Of course, Paternal Grandmother testified to the contrary that Mother never said that she was using again. The Court does not find Paternal Grandmother's testimony credible. The record established that Mother was exhibiting outward physical signs indicative of her drug use, that Paternal Grandmother was aware that Mother had been taking Suboxone, and that Mother was evasive when asked if she was using. It was evident to this Court that Paternal Grandmother either knew or should have known that Mother was using; however, Paternal Grandmother did nothing to protect [Daughter], a four year old child, still in Mother's full-time care.

T.C.O. at 5-6 (references to notes of testimony and court documents omitted).

As the above excerpt from the trial court's opinion reveals, the trial court considered not only Paternal Grandmother's testimony at the January 17 detention hearing but also a January 13, 2014 adjudication from the

Department of Public Welfare, denying Paternal Grandmother and Paternal Grandfather's appeal from the denial of their application as a kinship/foster family placement resource. N.T. Dependency Hearing, 1/22/14, Exhibit 2.

The trial court concluded:

> [T]he record contains sufficient evidence that the minor children were without proper care and control necessary for their physical, mental and emotional health. Both Mother and Father's drug addictions place the safety of these children at risk. Father is not now, nor has he been for the last four (4) [years], able to parent the minor children on a full-time basis. Furthermore, the Court believes that ample evidence shows that foster care is the only available placement to protect the minor children.

T.C.O. at 6. We agree. Father does not suggest he provided proper care or control for the minor children prior to the determination of dependency or that he would be an appropriate resource going forward. Because the trial court did not abuse its discretion in adjudicating the minor children dependent pursuant to 42 Pa.C.S.A. § 6302, or in concluding that placement of the minor children in foster care was best suited to the safety, protection and physical, mental, and moral welfare of the minor children in accordance with 42 Pa.C.S.A. § 6351(a), we shall not disturb the trial court's January 27 Orders of Adjudication and Disposition with respect to the minor children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/1/2014</u>