J-S05001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1881 EDA 2020 |

Appeal from the Order Entered September 17, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000721-2020

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                                   **FILED APRIL 13, 2021**

S.P. ("Mother") appeals from the dispositional order wherein the juvenile court adjudicated her infant daughter, S.A., dependent and placed her in the legal and physical custody of the Philadelphia Department of Human Services ("DHS").  We affirm.

DHS's involvement with the family precedes S.A.'s premature birth in June 2020, as the agency previously removed the child's two older siblings from the care of Mother and J.A. ("Father"), who still reside together, due to allegations of child abuse based in 2017.  The child abuse report, which was founded upon medical neglect and the failure to meet the children's needs, was substantiated.  The results of a 2018 parenting capacity evaluation ("PCE") conducted in conjunction with those dependency proceedings illustrated, *inter alia*, that Mother lacked the capacity to provide safety and/or

permanency to her children. Mother has a history of anger management problems and mental health issues, including suicidal ideations, and it was unclear whether she had resumed her medication after giving birth to S.A.

Upon S.A.'s discharge from the hospital, the juvenile court granted a temporary commitment to DHS. Child was placed in the kinship care of her maternal aunt, who also cares for S.A.'s older brother. In addition, maternal aunt desires to be the placement option for their sister, who is currently in pediatric care.[1] The aunt supervises Mother's visitation with S.A. and her brother. The status of Mother's supervised visitation with S.A.'s older sister is uncertain because of the COVID-19 pandemic.

Within one month of S.A.'s birth, DHS filed a dependency petition and, after an evidentiary hearing on September 17, 2020, the juvenile court adjudicated S.A. dependent. Specifically, juvenile court reasoned that the credible, persuasive testimony presented by two parenting experts, the DHS investigator, and the caseworker from the community umbrella agency that coordinated the family's services constituted clear and convincing evidence that Mother and Father's continuing parental incapacity rendered their infant

---

[1] During the dependency hearing, Tianna Pelzer, the family's case manager, testified that she visited S.A. in the kinship home with her maternal aunt and confirmed that her needs were being satisfied. N.T., 9/17/20, at 50. The infant was current with her immunizations and had regularly-scheduled pediatric appointments. *Id*. However, Ms. Pelzer noted her concern regarding episodes where the infant choked on her vomit to the extent that she turned blue. *Id*. The maternal aunt was required to manually clear the child's throat to restore unobstructed breathing. *Id*. at 50.

daughter dependent pursuant to Section 6302 of the Juvenile Act. The juvenile court continued S.A.'s placement in kinship care with the maternal aunt, which the court found to be the least restrictive placement alternative available. The child's placement goal remains reunification with her parents.

Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She presents one issue for our review: "Did the Trial Court committed [sic] an error of law and/or abuse its' [sic] discretion when it adjudicated the minor child dependent without clear and convincing evidence pursuant to 42 Pa.C.S. section 6301-6365 of the Juvenile Act?" Mother's brief at 7.[2]

We review the juvenile court's order of adjudication and disposition for an abuse of discretion. *See*, *e.g.*, *In Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). Furthermore, "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *Id*. (cleaned up).

As we noted in *In re G.T.*, 845 A.2d 870, 872 (Pa.Super. 2004), DHS has the burden of proving by clear and convincing evidence the statutory

---

[2] Father did not file a notice of appeal or participate in this appeal. Similarly, Patricia Cochran, Esquire, the guardian *ad litem* appointed to advocate S.A.'s best interests, neglected to file a brief on behalf of the child.

ground for a finding that S.A. is a "dependent child." The Juvenile Act defines a dependent child as, *inter alia*, one who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302(1). "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." **In re G.T.**, **supra** at 872 (cleaned up).

> Furthermore,

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state.

**In re D.A.**, 801 A.2d 614, 617 (Pa.Super. 2002) (*en banc*) (cleaned up).

Mother argues that the juvenile court erred in adjudicating S.A. dependent upon less than clear and convincing evidence. Specifically, Mother contends that the court based its decision upon Mother's prior interaction with DHS during 2017 when her two older children were adjudicated dependent. She continues that, since she was compliant with her reunification objectives

relating to the older children and DHS failed to present any evidence of a current parental incapacity or inability to care for S.A., the agency effectively discriminated against her due to her intellectual disability.

Mother's contentions are unconvincing. Mother's argument confuses her prior compliance with DHS service directives with an actual capacity to parent her infant daughter. As demonstrated by the evidence presented during the evidentiary hearing, Mother is not currently able to provide the necessary parental care and control, despite her compliance with services.

William F. Russell, Ph.D., testified as an expert in the area of parental capacity evaluations ("PCE") and he discussed the specific PCE that he conducted on Mother during 2018. N.T., 9/17/20, at 4758. Dr. Russell explained that the PCE "is a review of an individual's ability to function in all the spheres of their life, . . . and provide a safe environment for the child." *Id*. at 59. Specifically, it examines a parent's history, current functioning, mental health, medical health, "and any area or subject that might interfere with their, ability to provide a safe environment for a child[.]" *Id*. The evaluation involves the combined review of background information, referral information and a clinical, structured interview. *Id*. at 58-60. While the evaluation typically includes psychological testing, he was not able to perform that component due to Mother's reading level. *Id*. at 60.

As it relates to Mother's cognitive abilities, Dr. Russell observed that, although it is possible for individuals with cognitive limitations to provide

appropriate and adequate care for children, his experience in this particular case revealed that the needs of the older children exceeded Mother's abilities to provide a safe environment. *Id*. at 62-63. Indeed, on multiple occasions he attempted to discuss with Mother the various medical problems, autism, and speech delays that affected the older children and Mother declined to acknowledge the issues. *Id*. at 62. He further noted that supervised visitation with the children was instituted in 2017 because of Mother's inappropriate interactions with the children and irregular attendance. *Id*. at 71-72. Furthermore, he stressed that the continuation of supervised visitation after three years of services reflects ongoing concerns regarding Mother's "ability to understand the threat and depth of the problems," provide a safe environment, and satisfy their needs. *Id*. at 66. He continued, "I would certainly think that if we are going to [argue] that she can care for the two older children . . . I think that the critical factor would have been that the visitation has been expanded and [she] is expanding [her] ability where [she] is not." *Id*. at 68.

Particularly damaging to Mother's argument that the juvenile court erred in ignoring her compliance with DHS's objectives is Dr. Russell's explanation that "[p]articipation doesn't equate to competence. . . . I think that following the recommendations is a positive, but I do not know that [it] provides them with the skill to take care of two children with very special needs." *Id*. at 68. In sum, Dr. Russell opined that although S.A. does not have any special needs,

Mother would not be able to care for her without additional support from an intensive case manager to help her and monitor her ability to provide safety. *Id*. at 69-71.

The juvenile court also considered the testimony of Erica G. Williams, Psy.D., who conducted Father's PCE. While Dr. William's testimony focused on Father, she corroborated Dr. Russell's position that Mother could not provide parental care for S.A. without assistance. *Id*. at 83. She explained that she looks to the parental ability to provide safety and permanency independent of other people being present, and concluded:

> There is substantial concern that even though all of these supports are in place, all of these services have been offered, professionals have weighed in, [and] provide[d] recommendations that there's still some amount of barriers that are still present that these parents cannot execute care of a child[,] even for a short period[,] without the help of another adult.

*Id*. at 83-84.

Significantly, Mother's witness, Elizabeth Lurenda, the Intellectual Disability Services ("IDS") supports coordinator for Mother, testified that the relevant services to assist Mother in caring for an infant are not currently in place and it is unclear whether those services could be implemented because of the limited type of waiver IDS will provide Mother. *Id*. at 91-95.

The totality of the circumstances implicated by the evidence in this case supports the juvenile court's decision. As an infant, S.A. is entirely dependent on her caregiver for her protection and survival, and Mother lacks the parenting capacity to provide her with proper parental care and control and

that capacity is not immediately available.  ***See In re G.T., supra*** at 872.

Stated plainly, notwithstanding Mother's compliance with the reunification

objectives relating to the older children, the certified record belies Mother's

contentions that she is capable of meeting S.A's basic needs and that the

juvenile court is discriminating against her due to her cognitive disability.  The

evidence presented during the hearing simply does not support those

assertions.  Accordingly, we affirm the juvenile court's dispositional order

adjudicating S.A. dependent and maintaining her placement with maternal

aunt.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2021