J-A13014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1469 WDA 2024 |

Appeal from the Order Entered October 30, 2024
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s): CP-04-DP-0000029-2024

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                     **FILED:  May 6, 2025**

M.H. ("Mother") appeals from the order adjudicating dependent her minor daughter, A.H., born November 2010.[1]  We affirm.

By way of background, Beaver County Children and Youth Services ("CYS") first became involved with Mother on July 16, 2024, when she called and requested assistance with her adult son, who eventually moved out of the home.  CYS received a second referral the next month when T.H., the older half-sister of A.H., ran away and was voluntarily committed to a hospital.  The agency thereafter performed a home visit wherein it learned that Mother was having financial troubles and that the house was being run by a generator because the electricity had been shut off.

---

[1] A.H.'s father was not involved in the underlying proceedings and has not appealed.

Most pertinent here, a third referral was made to CYS on September 20, 2024.  In the early hours of that morning, Mother got into an argument with T.H. and demanded that she hand over her cell phone before going to school. T.H. refused, and Mother either slapped or struck her.  A.H. was standing nearby and observed the incident.  Mother then recruited another adult son to restrain T.H while Mother grabbed a bottle of bleach, opened it, and threw it at T.H.  The bleach made contact with her face and clothing and also struck A.H.

T.H. reported the incident to a school resource officer later that morning and complained of having a burning sensation in her eyes and on her face. The officer in turn contacted police and CYS.  T.H. was transported to the hospital, where her eyes were flushed.  Responding officers interviewed several people, including T.H. and Mother.  All of them confirmed the same general circumstances surrounding the dispute, except Mother claimed that the bottle in question only contained water.  Officer Christopher Stitt of the Beaver Valley Regional Police Department executed a search warrant on Mother's house, collecting two bottles of bleach and multiple articles of clothing from the girls that he testified smelled of bleach.  Mother was criminally charged with simple assault and recklessly endangering another person with respect to her conduct toward T.H.

Based on the above, CYS filed a petition for dependency as to both A.H. and T.H.[2] Following a shelter care hearing, the juvenile court placed both girls in licensed kinship non-family care, specifically with the family of one of T.H.'s friends, with whom A.H. was acquainted. The court conducted an adjudication hearing on October 22, 2024, and the evidence therein bore out the above events.

Additionally, CYS presented testimony from several of its employees outlining Mother's confrontational communication with the agency during the course of its involvement. Particularly, Kylie Ackerman, an intake case worker, stated that Mother largely refused to aid CYS in preparing a family finding report as to the girls and was not willing to provide the name or contact information for A.H.'s father.[3] Leann Miller, a protective case worker, indicated that in the month between the incident involving the bleach and the dependency hearing, Mother would not permit any home visits and would only correspond concerning visitation of the girls. CYS also introduced into evidence copies of several text messages illuminating Mother's combative language when communicating with CYS personnel. Nonetheless, the agency

_____

[2] The court adjudicated T.H. dependent in a separate case. Mother did not appeal that matter, and thus we focus on the facts as they pertain to A.H.

[3] Another witness confirmed that CYS eventually obtained what it believed to be the name of A.H.'s father but could not establish contact with him despite several attempts.

represented to the juvenile court that the goal for A.H. was reunification with Mother.

The court took the matter under advisement at the conclusion of testimony. It ultimately entered an order on October 28, 2024, finding A.H. dependent and calling for her continued kinship placement. Mother timely filed both a notice of appeal and a statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). The juvenile court authored a responsive opinion. Mother presents three issues for our consideration:

> I. Whether the [juvenile] court erred in finding [A.H.] to be a dependent child without proper care or control, subsistence, education as required by law, or other control necessary for her physical mental, or emotional health, or morals?
>
> II. Whether the [juvenile] court erred in removing [A.H.] from the home of Mother. . ., finding that the placement in license kinship non-relative care was the least restrictive placement that meets the needs of the child?
>
> III. Whether the [juvenile] court erred in determining that reasonable efforts were made by [CYS] to prevent or eliminate the need for removal of [A.H.] from the home?

Mother's brief at 7 (some capitalization altered).

In her first issue, Mother attacks the court's finding of dependency as to A.H. We begin with the relevant legal principles:

> Our standard of review for a dependency adjudication requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We therefore review for an abuse of discretion. A trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was

either manifestly unreasonable or the product of partiality, prejudice, bias[,] or ill will.

***Interest of J.R.***, ___ A.3d ___, 2025 WL 797841 at *4 (Pa.Super. March 13, 2025) (cleaned up).

CYS's petition requested that A.H. be found dependent pursuant to subsection (1) of the Juvenile Act's definition of "dependent child." This applies to a child who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302(1). To adjudicate a child dependent, a court must determine that this requirement is satisfied by clear and convincing evidence.

***See Interest of Q.R.***, 199 A.3d 458, 467 (Pa.Super. 2018). In that vein:

> "Clear and convincing" evidence has been defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.
>
> [Further, i]n accordance with the overarching purpose of the Juvenile Act to preserve the unity of the family wherever possible . . ., a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined "proper parental care" as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.

***Id***. at 467-68 (cleaned up).

In its Rule 1925(a) opinion, the juvenile court cogently explained the rationale for its decision to adjudicate A.H. dependent. It began by noting that it found all the testimony presented by CYS to be credible. *See* Juvenile Court Opinion, 12/23/24, at 26. These attestations collectively showed that Mother intentionally struck T.H. and threw bleach onto her in anger, which in turn got into T.H.'s face and eyes, and that the substance also splashed onto A.H. *Id*. at 26-27. The court found Mother's conduct to be both "dangerous" and "alarming" with respect to not only T.H. but also A.H., and demonstrative of Mother's "uncontrolled, explosive, and unpredictable behavior" that "placed the children at risk." *Id*. at 27-28. The court acknowledged that A.H. was not the direct recipient of Mother's punishment on the occasion in question but asserted that A.H. was nonetheless endangered during the incident and that our case law calls for courts to scrutinize the safety of children in such situations. *Id*. at 26, 28 (citing *In re G.T.*, 845 A.2d 870 (Pa.Super. 2004)). It resolved that "Mother's callous use of bleach as a weapon in a way that foreseeably exposed each child to that product, led to the conclusion that each child was dependent. This was a conclusion necessary to mitigate any future risk to [A.H.]'s physical, mental and emotional wellbeing." *Id*. (some capitalization altered).

In arguing that the court erred, Mother avers that "[t]here was no testimony indicating that any of [Mother]'s children, including . . . A.H., ever lacked proper education or subsistence. There was no evidence or testimony presented that [Mother] used alcohol or a controlled substance that place[d]

the health, safety or welfare of the child at risk." Mother's brief at 14. She also accuses the court of finding A.H. dependent merely because of the incident involving T.H. *Id*. She recounts that there was no testimony that A.H. suffered from any trauma or physical harm from the occurrence. *Id*. at 15. Mother additionally criticizes the juvenile court for relying on *In re G.T.*, as that case entailed significantly more severe facts involving two siblings being adjudicated dependent when the younger sibling was found to be suffering from shaken baby syndrome, but the other was unharmed. *Id*. at 15. Mother concludes:

> The incomparability in severity between the present incident, and the [facts] leading to adjudication found in the precedent the [juvenile] court relies on, coupled with its own categorization of the physical and emotional harm to A.H. as "potential", do not meet the standard of clear and convincing evidence that the minor child A.H. is a dependent child.

*Id*. at 16-17.

Upon review, we determine that the juvenile court did not abuse its discretion in finding A.H. dependent. To begin, it is clear from the court's thorough analysis that it did not do so solely because it reached the same dependency determination as to T.H. Instead, it considered both Mother's prior history with CYS and the entirety of the bleach incident, which included A.H.'s witnessing of the violence and her exposure to the bleach that, in fact, injured T.H. The court explicitly weighed the fact that Mother's uncontrolled behavior has a substantial risk of affecting A.H., even if she was not the intended victim during the event in question. It also correctly noted that

pursuant to our case law, a parent's dangerous conduct can form the basis of a finding of dependency, even if the child in question is not harmed. ***See***, ***e.g.***, ***In re G.T.***, 845 A.2d at 873 (noting that a parent's failure to seek medical attention for a child "evidenced extremely poor judgment" which put all household children at risk, and the fact that one child "suffered no adverse effects from this decision is both irrelevant and fortuitous"). Finally, to the extent that Mother argues that the court erred in finding that the substance used in the attack was bleach, as opposed to water, we defer to the court's credibility determinations, which are supported by the record, particularly Officer Stitt's testimony. ***See*** N.T. Hearing, 10/22/24, at 78-79 (stating that upon executing a search warrant, he noticed a potent odor of bleach within the house near the area of the altercation, on the clothes gathered from there, and the recovered empty bleach bottle). No relief is due.

We address Mother's remaining two issues together. She collectively contends that the court erred in finding that kinship placement was the least restrictive placement option and that CYS failed to sufficiently prove that it undertook reasonable efforts prior to the removal of A.H. and her sister. ***See*** Mother's brief at 17-20. Pursuant to 42 Pa.C.S. § 6351, upon a finding of dependency, a court may transfer temporary custody to "[a]ny individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by

the court, is found by the court to be qualified to receive and care for the child." 42 Pa.C.S. § 6351(a)(2)(i). However,

> Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:
>
>> (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
>>
>> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
>>
>> (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or
>>
>> (4) if the court has previously determined pursuant to [§] 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and
>>
>> (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.
>
> The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required.

42 Pa.C.S. § 6351(b).

In addressing these two claims, the juvenile court stated:

- 9 -

> [T]he facts presented at adjudication established that an incident of abuse occurred to [A.H.]'s sibling, which exposed the child herself to a situation of potential physical and emotional harm. Given this family's two prior agency referrals, a disruptive and . . . uncooperative [Mother], and an extremely hazardous incident, removing the child from the home of [Mother] is best suited to the safety, protection and physical, mental, and moral welfare of [A.H.] at this time.

Juvenile Court Opinion, 12/23/24, at 29 (some capitalization altered). As to the reasonable efforts taken by CYS, the court noted that the credible testimony from the various witnesses "showcased how the [a]gency made multiple attempts to communicate and work with" Mother. *Id*. at 30. It found that she often refused to cooperate with CYS and was combative, highlighting that she denied multiple requests for home visits. *Id*. at 30-31. Based upon the above, the court concluded that A.H.'s best interest would be served by placement outside the home away from Mother and in the same location as T.H. *Id*. at 31.

Mother again counters that this case is not so serious as to warrant placement outside the home, like in the cases relied upon by the juvenile court, such as in *In re G.T*. *See* Mother's brief at 17. She further asserts that the court erroneously applied a "best interests of the child" standard, which is not the proper test for determining placement. *Id*. at 18. Mother avers that the court neglected to provide "any supportive reasons why there were no less restrictive alternatives [to out-of-home placement] available." *Id*.

With respect to CYS's efforts, Mother emphasizes portions of the notes of testimony purportedly showing that she had "abundant communication" with the agency. *Id*. at 19. She contends that this debunks the court's assertion that CYS struggled to communicate with her. *Id*. Mother concedes that her language may have been confrontational in the months following CYS's filing of the dependency petition, but that it was civil beforehand. *Id*. at 19-20. She argues in sum that "[t]here is nothing [i]n the record indicating what efforts were made to prevent the placement of the child outside of the home." *Id*. at 20.

We find that the juvenile court's findings are supported by the record and free of error. Our review of the court's order of adjudication and disposition demonstrates its consideration of the required matters enumerated at § 6351. Based on Mother's dangerous conduct toward T.H., which also placed A.H. at risk, the court was within its rights to find that keeping A.H. within the home "would be contrary to [her] welfare, safety or health[.]" 42 Pa.C.S. § 6351(b)(1). This is particularly true in light of Mother's then-recent history of referrals to CYS concerning her difficulties in (1) handling the behavior of an adult son, (2) addressing T.H.'s mental health issues and threats of self-harm, and (3) maintaining a steady income so as to keep the electricity running in the house.

Furthermore, the testimony from the dependency hearing established that CYS took steps to potentially reduce the likelihood of necessary placement, but Mother refused to cooperate. She would not aid in the

preparation of the family finding report, provide the name or contact information for A.H.'s father, or communicate with case workers for any matter other than visitation. Even when Mother did correspond, she was combative in her language and otherwise hostile toward CYS's case workers. Most critically, she would not permit any home visits to allow CYS to ensure the safety of the home environment for the children.

In short, we have no cause to disturb the juvenile court's order finding A.H. dependent and continuing her placement with a licensed kinship non-family.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/6/2025