J-S41013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.G., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BUCKS COUNTY CHILDREN AND YOUTH SERVICES | : : : : : : | |
| | : | No. 2194 EDA 2025 |

Appeal from the Order Entered August 1, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-DP-0000038-2025

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED JANUARY 16, 2026**

Bucks County Children and Youth Services ("CYS") appeals from the order denying its petition to adjudicate Y.G., born in January 2025, dependent. We affirm.

The trial court provided a thorough background of CYS's involvement in the life of Y.G.'s mother, M.G. ("Mother"). Relevantly, CYS previously filed a dependency petition regarding Y.G.'s older sibling, J.G., who was born in October 2023. In August 2024, the court adjudicated J.G. dependent after finding that CYS proved by clear and convincing evidence that he was without proper parental care and control. Of paramount importance to the court in rendering that decision were the following facts: "Mother was incorporating J.G. into her delusional thoughts," and had neglected to meet J.G.'s basic

_____

[*] Retired Senior Judge assigned to the Superior Court.

needs, provide a place to live, or follow up with necessary medical care, along with "J.G. experiencing developmental delays." Trial Court Opinion, 9/10/25, at 1-2. Mother was pregnant with Y.G. during these proceedings and gave birth in January of 2025.

On June 24, 2025, CYS filed a petition for emergency protective custody of Y.G. based, in part, upon Mother's housing instability and unaddressed mental health issues. The court placed Y.G. in agency custody for forty-eight hours and conducted a shelter care hearing. Evidence adduced at the hearing clarified that "Mother was eligible to re-enter the Family Services Association homeless shelter ('FSA Shelter'), from which she had been previously evicted." *Id*. at 2. Based thereupon, the court denied the shelter care application and returned custody of Y.G. to Mother, who returned to the FSA Shelter with Y.G.

The dependency petition at issue in this appeal followed on July 7, 2025. The court held an adjudication hearing on July 30, at which both Mother and Y.G.'s guardian *ad litem* ("GAL") opposed an adjudication of dependency. In addition to taking judicial notice of J.G.'s dependency proceedings, the court heard from FSA Shelter case manager Elizabeth McGoldrick; CYS caseworkers Kaitlin Howey and Carrie Albright; CYS placement resources coordinator Jennifer Dombroski; and Mother. In its Rule 1925(a) opinion, the trial court detailed the testimony offered by those witnesses. *Id*. at 3-7. Notably, Y.G. was up to date medically and had achieved appropriate milestones. Although Mother was twice discharged from the FSA Shelter in 2025, she was otherwise able to secure residency at either another shelter or motel. Additionally,

whether in the FSA Shelter or other temporary lodging, Mother provided for Y.G.'s basic needs.

Those observing Mother and Y.G. during the relevant period had no safety concerns serious enough to warrant intervention. The items identified by CYS or FSA Shelter staff as troubling pertained more to suggestions that Mother should exercise better parenting skills, but not that Y.G. was ever harmed. For example, there was dissatisfaction at the FSA Shelter that Y.G. was sleeping in a Pack 'n Play that CYS had provided, but there was no evidence offered that it was unsafe for Y.G. to do so. Additional isolated incidents included (1) not being attentive enough to Y.G. during a verbal altercation she had with five other individuals at the FSA Shelter, in that she put Y.G. in her carrier, unbuckled, near a table's edge and left a plastic bag within arm's reach; (2) allowing stuffed animals and a blanket in the portable crib on one occasion while Y.G. slept; and (3) providing Y.G. a lollipop.

During the hearing, the court itself observed Mother's interactions with Y.G., noting as follows:

> Mother was able to effectively balance caring for [Y.G.] while being engaged in the hearing. She comforted [Y.G.], prepared a bottle, fed [Y.G.], and kept [Y.G.] content throughout the hearing. When Mother took the stand to testify, she allowed her counsel to hold [Y.G.] (which counsel managed to do while maintaining her full engagement in the hearing).

*Id*. at 7 (citation omitted). The court found Mother credible and "demonstrated her understanding of the [c]hild's needs and her commitment and ability to meet those needs." *Id*. This assessment was echoed by the

GAL, who opined that he did not "believe a finding of dependency is appropriate in that [Mother] . . . has demonstrated the ability to properly parent [Y.G.] at this time." N.T. Hearing, 7/30/25, at 87. Ultimately, the court determined that CYS had not met its burden and denied the dependency petition, noting that "the evidence in [J.G.'s] case was very different, and I simply haven't heard it here." *Id*. at 89.

CYS timely appealed and both it and the trial court complied with the mandates of Pa.R.A.P. 1925. CYS presents the following questions for our consideration:

1. Did the trial court abuse its discretion and err as a matter of law in denying [CYS's] dependency petition where clear and convincing evidence was presented and the trial court failed to consider relevant evidence thereby not conducting a comprehensive and searching inquiry of the record?

2. Was it manifestly unreasonable for the trial court to disregard prognostic evidence, and thus undermined [*sic*] the integrity and fairness of the judicial determination?

CYS's brief at 5 (cleaned up).[1]

We recently outlined the law pertinent to CYS's issues on appeal thusly:

This Court's standard of review for dependency cases requires that we accept the trial court's findings of fact and credibility determinations when supported by the record. Th[is] Court is not required to accept the lower court's inferences or conclusions of law and accordingly reviews for an abuse of discretion.

A dependency hearing is a two-stage process governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6365. The first stage requires

---

[1] We note with displeasure that despite expressing a clear opinion during the dependency proceedings, the GAL has not filed a brief in this Court.

- 4 -

the court to hear evidence on the dependency petition and to determine whether the child is dependent.  *See* 42 Pa.C.S. § 6341(a).  Section 6302, defines a "dependent child," in part, as one who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent that places the health, safety or welfare of the child at risk.

42 Pa.C.S. § 6302(1).  This Court has held a child will be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available.  Proper parental care has been defined as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.  The question of whether a child is lacking proper parental care and control encompasses two discrete questions:  whether the child presently is without proper care and control, and if so, whether such care and control is immediately available.  In answering the first question, the paramount concern is the welfare of the child at the time of the hearing.  In answering to the second question, it may be necessary for the hearing court to look to the future.

A finding that a child is dependent requires proof by clear and convincing evidence, *i.e.*, testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.  . . .

A court in a dependency proceeding must conduct a comprehensive and searching inquiry into the record taking evidence from all interested parties and also from objective, disinterested witnesses.  This searching inquiry is necessary to ensure the trial court has a comprehensive view of the matter, is aware of all relevant concerns, and makes an informed decision.

It is long settled a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent.  This Court has noted when dealing with an infant, the failure to allow

prognostic evidence would preclude a child welfare agency from ever seeking to have a newborn declared a dependent child, no matter how unfit or incompetent the natural parents are. This Court has specifically stated that a rule prohibiting a court from considering prognostic evidence and compelling the court to place the child with natural parents to determine if they can render proper care ignores the possibility that if the experiment proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal.

*Int. of K.B.*, 331 A.3d 50, 56–57 (Pa.Super. 2025) (cleaned up, emphases omitted). Indeed, "prognostic evidence, particularly in cases involving infants, is relevant and admissible and so powerful it can itself sustain a finding of dependency." *Id*. at 59 (cleaned up). However, "a child should not be found to be dependent merely because a sibling has been adjudicated dependent." *In re G.T.*, 845 A.2d 870, 872 (Pa.Super. 2004) (cleaned up).

CYS argues that the trial court erred in not finding Y.G. dependent when she is "a vulnerable infant whose mother has continuously failed to address or acknowledge her mental health, secure safe and stable housing, and whose other child is dependent[.]" CYS's brief at 22. The agency also laments the court's failure to consider Mother's uncooperativeness with CYS in declining to grant access to Y.G.'s medical records, provide details surrounding Mother's purported income sources from Maryland, or offer any information regarding the identity of Y.G.'s father. *Id*. at 36-38.

Further, CYS contends that the "[c]ourt failed to conduct a comprehensive and searching inquiry to the prognostic evidence with respect to the dependency issues presented." *Id*. at 38. It claims that the court overlooked the important evidence surrounding J.G.'s dependency and

improperly limited testimony regarding his continued need for placement. ***Id***. at 38-40. CYS summarizes: "While the [t]rial [c]ourt noted that Mother was meeting Y.G.'s basic needs at the time of the hearing, it failed to consider the broader context of Mother's circumstances and the potential for future harm." ***Id***. at 41.

In its Rule 1925(a) opinion, the trial court explained that the evidence it heard proved not that Mother had failed to provide proper parental care, but rather that she "has been meeting [Y.G.]'s basic needs and [Y.G.] is thriving." Trial Court Opinion, 9/10/25, at 12. The court recognized Mother's history of mental health struggles and its impact on her ability to maintain stable housing. ***Id***. However, it emphasized that whether considered separately or in combination, mental health problems and "unstable housing [do] not **necessarily** mean that one's children should be adjudicated dependent." ***Id***. at 12-13 (emphasis in original, footnote omitted). In so stating, the court acknowledged that the Adoption Act does not apply in a dependency action, and therefore the court is not foreclosed from declaring a child dependent based solely upon unsuitable housing or a lack of income. ***Id***. at 13 n.2. On the other hand, the court aptly observed that the presence of environmental factors does not mandate a finding of dependency. Instead, the court is required, "in light of the specific facts of each case[,]" to "consider how these problems impact a parent's ability to provide a child proper parental care and control." ***Id***. at 13 & n.2.

As to the prognostic evidence, the court indicated that it admitted and considered the older sibling's dependency proceedings and adjudication. Nonetheless, it did not deem that evidence dispositive:

> [U]nlike in the matter involving [Y.G.]'s sibling, J.G., there was no evidence that [Y.G.] was failing to meet her milestones, that Mother was failing to provide for [Y.G.]'s general needs, or that Mother was failing to follow up with any specific medical and developmental concerns. Unlike [with] J.G., where Mother did not have a plan or ability to keep a roof over J.G.'s head, in this case, Mother has, without fail, been able to do so with Y.G.

*Id*. at 16-17.

Our review of the record bears out the court's conclusions. Presently, although Y.G. was not a newborn infant, the court properly took into consideration the prognostic evidence of J.G.'s dependency proceedings, which the court itself oversaw, in light of her young age. As a counterweight, the court also had the benefit of approximately seven months of Mother demonstrating her ability to parent Y.G. During that time, Mother maintained Y.G.'s wellness schedule with her pediatrician, ensured that they had a roof over their heads, and assisted Y.G. in reaching her milestones. The housing situation was unpredictable and Mother did not have a permanent housing plan, but the record supports the court's finding that Mother had successfully found acceptable lodging throughout Y.G.'s life by whatever means necessary.

It is clear that the circumstances facing the court during J.G.'s dependency hearing simply were not present for Y.G., and that Mother had strived to overcome her prior parenting deficiencies such that Y.G. was

thriving. Moreover, the facts of this case stand in stark contrast to those in *Int. of K.B.*, where we reversed the court's denial of a dependency because the evidence established the child was without proper parental care and none was immediately available. To wit, at the time of the hearing, the child in *Int. of K.B.* was under two months old, "had recently been released from intensive care, and had not resided with [the m]other." *Int. of K.B.*, 331 A.3d at 61. The mother was homeless and at times vacillated between the homes of two relatives, both of which "were unsuitable for [the c]hild, and neither of the other relatives offered by Mother as kinship resources were willing to allow [the mother and child] to live with them." *Id*. (cleaned up). Further, the "[m]other was evasive, untruthful, and uncooperative." *Id*. (cleaned up). Contrarily, Y.G. was up to date medically, had lived with Mother for seven months, had been cleared from Children's Hospital of Philadelphia after Mother took her for observation once she resumed custody upon the removal of the protection order, and Mother was able to obtain acceptable temporary lodging.

Plainly, CYS believes that the court should have weighed Mother's parenting history differently. However, in conducting its comprehensive inquiry, the court deemed J.G.'s dependency proceedings to be of less significant weight because that matter concerned "Mother's parenting abilities during prior time periods, with a different child with different needs, and different dependency factors in consideration, rather than focusing on Mother's present ability to parent Y.G." Trial Court Opinion, 9/10/25, at 15 (citations omitted). No matter the severity of the prognostic evidence, it

cannot automatically supplant the present facts that Mother had made substantial changes in her life to make sure that Y.G. had housing and proper medical care. The court recognized the isolated incidents of concern that CYS and FSA Shelter representatives attested to, but found that those did not amount to clear and convincing evidence that Mother had failed to provide proper parental care and control for Y.G. The court did not abuse its discretion in how it weighed the evidence before it.

The court's findings are supported by the record, and we discern no abuse of discretion in the court's conclusion that CYS did not prove that Y.G. was, at the time of the hearing, without proper parental care and control. Accordingly, we affirm the order denying CYS's dependency petition as to Y.G.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/16/2026