J-A26012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A/K/A K.W. A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1367 EDA 2021 |

Appeal from the Order Entered June 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0012001-2009

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1368 EDA 2021 |

Appeal from the Order Entered June 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0095933-2008

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 13, 2022**

L.S. ("Mother") appeals from the orders of adjudication and disposition

entered on June 11, 2021, in the Court of Common Pleas of Philadelphia

County, with respect to her daughters, K.S. a/k/a K.W., born in December of 2008, and K.S., born in April of 2005.[1] We affirm.

We summarize the relevant facts and procedural history as follows. On January 22, 2021, the Philadelphia Department of Human Services ("DHS") received a general protective services ("GPS") report alleging concerns about Mother's behavioral health and inappropriate discipline of K.S. and Ky.S. N.T., 5/7/21, at 20-21. On that same date, the police were called to the home for an incident involving Mother and an older sibling of K.S. and Ky.S. *Id*. at 21. While in the home, K.S. and Ky.S. whispered to the police that they were afraid and asked them not to leave. *Id*. at 21-22. K.S. and Ky.S. stated that Mother kept a gun in the home, which she had used to threaten them. *Id*. at 23-24. Pursuant to a search warrant, Mother produced the firearm and the police took possession of it. *Id*. at 24, 38-40.

While the police were still at Mother's home, the DHS investigator, Kim Hightower, arrived and interviewed K.S. and Ky.S. *Id*. at 25. The children reported to her that Mother deprives them of food as a form of punishment

_____

[1] In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court refers to Mother's younger daughter as K.S. and her older daughter as Ky.S., and we do the same in this memorandum.

K.S.'s father, R.C., participated in the subject proceeding. Although R.C. is referred to as R.K. in the transcript for the second day of testimony, we refer to him in this memorandum as R.C. R.C. did not file a notice of appeal, and he is not a party to this appeal. The father of Ky.S. is unknown, and no unknown father of Ky.S. has appealed from this order.

and hits them with sticks and canes. *Id*. at 25-26. In addition, Ky.S. explained that she was truant from school because Mother made her clean the house. *Id*. During the ensuing hearing, Ms. Hightower testified that K.S. and Ky.S. "appear[ed] to be very thin[, a]s if they were emaciated[.]" *Id*. at 27. Moreover, she stated that Mother neglected to feed K.S. through a nasogastric tube as was required daily. *Id*. at 27-28.

The trial court immediately placed K.S. and Ky.S. in the protective custody of DHS. On February 8, 2021, DHS filed dependency petitions. The hearing occurred virtually, due to the COVID-19 pandemic, on May 7, 2021, during which K.S. and Ky.S. were represented by a Child Advocate, Shannon Parker Sherwood, Esquire. DHS presented the testimony of Ms. Hightower, Brianna Pinckney, the supervisor from Community Umbrella Agency ("CUA"), Ky.S., then sixteen years old, and R.C.

At the conclusion of DHS's case-in-chief, Mother's court-appointed counsel, Angelina Dagher, Esquire, stated that Mother would testify on her own behalf. However, the trial court determined that Mother would first need to be appointed separate "Fifth Amendment Counsel" based upon potentially incriminating statements that Mother made to the children.[2] N.T., 5/7/21, at

---

[2] Ms. Pinckney testified K.S. and Ky.S. told her that, approximately one week before the January 22, 2021 incident that gave rise to the above-mentioned GPS report, Mother "made the statement . . . that I can make more kids. I don't need you guys, while waving the firearm." N.T., 5/7/21, at 43. Ms. Pinckney stated that K.S. and Ky.S. reported that Mother used her "small black *(Footnote Continued Next Page)*

82-83. The court appointed Joshua Weil, Esquire, as separate counsel to advise Mother regarding her Fifth Amendment rights. *Id*. at 83. The court then "bifurcated" the adjudicatory hearing and continued the hearing so that Mother could consult with Attorney Weil. *Id*. at 83-84.

The hearing continued virtually on June 11, 2021, at the beginning of which Attorney Dagher requested a continuance in order to file a motion to withdraw based upon "irreconcilable differences between [her] and [Mother]." N.T., 6/11/21, at 12. The court denied the continuance request. *Id*. Attorney Dagher informed the court that she would not present Mother's testimony and she had no other evidence. *Id*. at 12-14.

Counsel then presented their closing arguments, during which the Child Advocate supported the dependency petitions. Thereafter, Mother, on her own behalf, requested in open court that the trial court recuse itself for bias, which the court denied. N.T., 6/11/21, at 32-34.

On June 11, 2021, the trial court adjudicated K.S. and Ky.S. dependent, and formally removed K.S. and Ky.S. from Mother's home, finding it contrary to the children's welfare. The court directed that the children be moved from shelter care to a kinship home when the appropriate clearances were

---

gun . . . in a threatening manner to basically gain control over the girls or to scare them into doing something[.]" *Id*. at 42.

obtained.[3]  N.T., 6/11/21, at 23-25, 27.  The court ordered Mother to stay away from the kinship home once K.S. and Ky.S. secured placement.  *Id*. at 25.

The court directed supervised line-of-sight visitation with Mother at the discretion of K.S. and Ky.S.  Furthermore, it ordered that Mother be referred for a parenting capacity evaluation and a psychiatric evaluation.  The court also referred Mother to Behavioral Health Services ("BHS") for consultations and/or evaluations, and to the Clinical Evaluation Unit ("CEU") for a drug screen, drug and alcohol assessment, and three random screens.  Lastly, the court referred Mother to the Achieving Reunification Center ("ARC") for a parenting program.  With respect to K.S. and Ky.S., the court ordered that they likewise be referred to BHS, and that family therapy be implemented when appropriate and at the recommendation of their therapist.

On July 7, 2021, Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal at the two docket numbers, which this Court consolidated *sua sponte*.  The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on August 6, 2021.

---

[3] Ms. Pinckney testified that K.S. and Ky.S. prefer to be placed together in a specific kinship home with a woman, whom they refer to as an aunt, who "has been a very strong support for them."  N.T., 5/7/21, at 56.

In the statement of questions involved in her consolidated brief, Mother raises eleven assertions which are identical to the errors she asserted in her concise statements. Mother's issues are as follows:

[1.] The court erred in finding present inability, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[2.] The court erred in finding that there were findings of abuse, neglect and/or dependency of the minor child, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[3.] The court erred in finding that it was in the best interest of the child to be removed from the home of [M]other, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[4.] The court erred in finding that there were reasonable efforts to prevent removal from home of [M]other, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[5.] The court erred in transferring custody of the child to [DHS], when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[6.] The court erred in transferring custody of the child to [DHS] and disrupting the bonding of [M]other and child, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[7.] The court erred in denying counsel for [M]other's oral motion to withdraw, and not ruling upon counsel's formal filed motion to withdraw in a timely manner, when [M]other stated in writing that she did not wish to be represented by said counsel and filed a

complaint against the trial judge as to his comments and treatment of her and her counsel and the DHS investigator, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[8.] The court erred in determining that the child was a dependent child, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[9.] The court erred in not recusing himself, when he learned of the complaint filed against him by [M]other.

[10.] The court erred in ordering the referrals for Parenting Capacity Evaluation, BHS consultation and/or evaluation, to CEU, for psychiatric evaluation, and to ARC for parenting, when K.S. AKA K.W. was not hurt or harmed by [M]other, and the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded.

[11.] The errors committed by the court below deprived [Mother] of her rights to due process and equal protection under the law.

Mother's brief at 3-4 (unnecessary capitalization omitted).[4]  The Child

Advocate filed a brief supporting the orders of adjudication and disposition.

At the outset, we observe Mother's issues, with the exception of the

ninth and eleventh, refer only to K.S.  However, because the same facts are

_____

[4] Mother's brief is deficient to the extent that she neither divides the argument section into separate parts nor distinctively displays her claims.  **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part -- in distinctive type or in type of distinctively displayed -- the particular point treated therein, followed by such discussion and citation of the parties as are deemed pertinent").  However, since this deviation from the procedural rule does not impede our review, we decline to quash or dismiss the appeal pursuant to Pa.R.A.P. 2101.

applicable to both orders in this consolidated appeal, and the remaining contents of Mother's brief include Ky.S., we review all issues as to both K.S. and Ky.S. *See* Pa.R.A.P. 2116(a) (providing, in part, "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Nevertheless, Mother has abandoned her seventh issue regarding her oral motion to withdraw,[5] ninth issue regarding recusal, and eleventh issue regarding her rights under the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution because she failed to support these assertions with any legal argument or citation to legal authority. Therefore, we do not address these contentions. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority); *see also* Pa.R.A.P. 2119(a).

In her remaining issues, Mother asserts that the trial court abused its discretion and/or erred in adjudicating K.S. and Ky.S. dependent and in removing them from her home formally. Mother also asserts that the court erred in ordering her to participate in the aforementioned services. We review these issues collectively for an abuse of discretion, which "requires an

---

[5] To the extent Mother also asserts in her seventh issue that the court failed to timely rule upon "counsel's formal filed motion to withdraw," we observe that Mother's counsel had not filed a motion to withdraw at the time of the relevant proceeding.

appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Dependency matters are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6475. This Court has explained:

> A "dependent child" is defined, in relevant part, as one who is "without proper parental care or control, subsistence, education as required by law or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S. § 6302. "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d 614, 619 (Pa.Super. 2002) (*en banc*).
>
> The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency.

*In re G., T.*, 845 A.2d 870, 872 (Pa.Super. 2004) (cleaned up).

Following a finding of dependency, the trial court may make an order for the child's disposition, which is "best suited to the safety, protection and physical, mental, and moral welfare of the child." 42 Pa.C.S. § 6351(a). The Juvenile Act provides, in relevant part:

**§ 6351. Disposition of dependent child.**

(a) *General rule.* — If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

> (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

> (2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

>> (i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

>> (ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

>> (iii) A public agency authorized by law to receive and provide care for the child.

> . . . .

**(b) *Required preplacement findings.* —** Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

> (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

> (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances[.]
>
> . . . .

42 Pa.C.S. § 6351(a), (b). We have explained that a court may not separate a child from his or her parent "unless it finds that the separation is clearly necessary." *In re G., T.*, *supra* at 873 (citation omitted). "Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody." *Id*. (internal quotations and citations omitted).

Instantly, we recognize Mother's repeated assertion that "the Child Protective Services Investigation Report, pursuant to 23 [Pa.C.S.] Chapter 63, set forth that the case was unfounded." Mother's brief at 3-4. DHS and the Child Advocate respond in their briefs that this assertion has no basis in the certified record. DHS's brief at 16; Child Advocate's brief at 19. We agree with DHS and the Child Advocate. Our review reveals two investigative reports that are referenced in the record. The first is the GPS report received by DHS on January 22, 2021, which Ms. Hightower clearly "validated" after investigation. N.T., 5/7/21, at 31. The second is a ChildLine report that Ms. Pinckney, the CUA supervisor, testified she recently filed after K.S. made a

new allegation that Mother had sexually abused her in 2019.[6] *Id*. at 48. To the extent that Mother is referring to the ChildLine report, her assertion that the trial court abused its discretion by adjudicating the children dependent and removing them from Mother's home because the report was "unfounded" is not supported by the record because the ChildLine report was still pending at the time of the subject proceeding. *Id*. at 49. As the certified the record reveals no unfounded GPS or ChildLine reports, this contention fails.

Moreover, the evidence clearly and convincingly supports the trial court's determination that K.S. and Ky.S. were presently without proper parental care or control necessary for their physical, mental, or emotional health pursuant to § 6302 of the Juvenile Act, and that it was necessary to remove them from Mother's home. The court found as follows:

> Both Ms. Hightower and Ky.S. credibly testified that Mother withheld food from [K.S. and Ky.S.] as punishment. ([N.T., 5/7/21,] at 25, 71). Notably, Ms. Hightower testified that [K.S. and Ky.S.] appeared to be very thin at the time of her initial interview, which also concerned the police. (*Id*. at 27). Ms. Hightower also credibly testified that Mother refused to utilize K.S.'s nasogastric feeding tube as instructed. (*Id*. at 27). In addition, Ky.S. testified that Mother would beat the children "all over their body", which mirrored Ms. Hightower's testimony that [K.S. and Ky.S.] had previously disclosed that Mother beat them with canes and sticks. (*Id*. at 25, 72). . . . Additionally, Ms. Pinckney testified that Mother frequently smoked marijuana in the home and had used [K.S.'s and Ky.S.'s] asthma pumps as a tool in order to smoke. (*Id*. at 46). Ms. Pinckney also testified that she has concerns regarding Mother's mental health due to her

---

[6] Ms. Pinckney testified that K.S. "reported [sexual abuse] to me during my visit in the home on the 5th, but she said that the incident occurred in 2019." N.T., 5/7/21, at 48.

behavioral inconsistencies and refusal to allow [K.S. and Ky.S.] to engage in therapy outside of her control. (*Id*. at 51-2). Mother's punishment of [K.S. and Ky.S.] through inappropriate means threatens their safety and demonstrates that she is both unwilling and unable to properly care for [them].

Trial Court Opinion, 8/6/21, at 9-10.

As discussed *infra*, the certified record supports the court's findings. In addition to Ms. Hightower's testimony concerning the children's emaciated appearance, Ms. Pinckney, the caseworker who was assigned to this family, testified that "the longest [K.S. and Ky.S.] reported going without eating was three days." *Id.* at 44. As it relates to K.S.'s nasogastric tube, Ms. Pinckney relayed K.S.'s statement that Mother "didn't always leave the feeding tube in [her] . . . and would only put [it] in for show for individuals [who were] coming to the home [who] knew [K.S.] had a feeding tube[.]" *Id*. at 27. Further, Ms. Pinckney stated that K.S. is prescribed PediaSure as a dietary supplement, which the family receives in bulk, but instead of giving the supplement to K.S., Mother requires the children to sell it to Mother's friends. *Id*. at 45-46.

With respect to the allegation regarding Mother's physical abuse, Ky.S. testified that Mother used sticks and canes to strike the sisters "all over our body." *Id*. at 72. Indeed, Ms. Pinckney testified that K.S., then age twelve,

has gone into great detail about [the] abuse that she has experienced. Specifically, Mom has punched her in the stomach; Mom has beat her with sticks. She reported that Mom has punched her and slapped her in the face, and as of recently, she made a new allegation of sexual abuse by Mom.

*Id*. at 48.

Critically, Ms. Pinckney testified that K.S. and Ky.S. are fearful to return home. She stated:

> Both girls specifically state that they are fearful of returning home. During my physical interview, [K.S.] was physically visibly fearful of returning home. She started shaking and crying. . . . [Ky.S.] specifically stated that she is afraid that if she does return home, mom's going to beat them more. [K.S.] reported that she's fearful that if she returns home, her mom will kill her.

*Id*. at 49.

In addition, as to substance abuse, K.S. and Ky.S. reported that Mother uses marijuana in the home "at minimum two to three times a day." *Id*. at 46. Ky.S. confirmed that Mother smokes marijuana in her presence, and that Mother has sent her and a family friend identified as her "big brother" to obtain marijuana. *Id*. at 73. Further, Ms. Pinckney testified that K.S. and Ky.S. have asthma, and they reported to her that Mother used their asthma inhalers "as a tool to smoke[.]" *Id*. at 47.

As the foregoing evidence supports the trial court's findings regarding Mother's neglect and physical abuse of the children and substance abuse problems, we do not disturb the adjudication of dependency due to a lack of proper parental care and control necessary for her daughters' mental or emotional health. For identical reasons, we also reject Mother's contention that the children's removal from Mother's home was anything but necessary. Stated plainly, the record belies Mother's repeated assertion that she did not harm the children. In actuality, the record bears out that separation is clearly required to protect K.S. and Ky.S. from Mother's abuse and neglect. ***See In***

*re G., T.*, *supra* at 873 (finding separation warranted "where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody").

Finally, as to Mother's assertion in her tenth issue that the court erred in ordering her to participate in services, that claim fails. Indeed, given the clear facts that support the dependency adjudications and placement, such services are reasonably required in assisting Mother in obtaining the parental skills necessary to reunify with K.S. and Ky.S.

Based on the foregoing, we discern no abuse of discretion by the court in concluding that K.S. and Ky.S. were presently without proper parental care and control necessary for their physical, mental, and emotional health. We additionally discern no abuse of discretion by the court in continuing K.S. and Ky.S. in foster care and transferring them to kinship care when clearances are obtained pursuant to § 6351. The evidence demonstrates that returning K.S. and Ky.S. home would be contrary to their safety, and physical, mental, and emotional well-being. Accordingly, we affirm the orders of disposition.

Orders affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>1/13/2022</u>

- 15 -