J-S04034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1351 EDA 2021 |

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001116-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1352 EDA 2021 |

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001116-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1353 EDA 2021 |

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001268-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>APPEAL OF: E.S., FATHER</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>No. 1354 EDA 2021</td></tr>
</table>

Appeal from the Order Entered June 25, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001268-2020

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 23, 2022**

E.S. ("Father") appeals from the juvenile court's June 25, 2021 order adjudicating N.B.-W. and D.A.-S. (collectively, "Children") dependent and finding that Father was a perpetrator of child abuse with respect to A.W., the Children's deceased, four-year-old brother (hereinafter, "Decedent"), pursuant to the Child Protective Services Law ("CPSL").[1] After careful review, we affirm.

The juvenile court summarized the relevant facts and procedural history of this case as follows:

> On October 9, 2020, the Philadelphia Department of Human Services ("DHS") received a Child Protective Services ("CPS") Report alleging that [N.B.-W.'s] four-year-old maternal Decedent ("Decedent") was transported from a hotel to the Children's Hospital of Philadelphia ("CHOP") and pronounced dead upon arrival. The CPS Report alleged that Decedent suffered from several medical conditions, including

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6301-6386.

- 2 -

microcephaly, asthma, seizure disorder, developmental delays, and Decedent required gastrostomy tube (G-Tube) placement. DHS received a supplement to the CPS report alleging that Decedent had been confined to bed and was diagnosed as suffering from cerebral palsy, infantile spasms, chronic lung disease, encephalomalacia, microcephaly, hydrocephalus, and seizures.

On October 15. 2020. DHS received a General Protective Services ("GPS") report alleging that Decedent's ten (10) year old half[-]brother[, N.B.-W,] was left alone with the medically needy four (4) year old Decedent for 10 to 12 hours a day and up to three to four days a week. The GPS Report alleged Mother was hospitalized between September 16, 2020 through October 9, 2020 due to pregnancy complications.[fn]  Father was the caregiver[fn] for Child N.B.-W and Decedent during this period. The GPS Report alleged that on October 9, 2020, the Decedent died when left under the care of his Child N.B.-W, without adult supervision.  On November 24, 2020, DHS obtained an Order for Protective Custody [("OPC")] for [Children].  On November 25. 2020, a shelter care hearing was held and the OPC was lifted and the temporary commitment was ordered. [Children] were placed in the care of a maternal uncle and the instant Dependency Petition was filed on December 4, 2020.

[fn] Mother was pregnant with Child D.A.-S during this period.  Child D.A.-S was born on October 5, 2020.

[fn] Father is the biological father of Child D.A.-S. Father at all material times was Mother's paramour. Children N.B.-W and Decedent are half siblings but not the biological children of Father.

Juvenile court opinion, 11/2/21 at 3-4 (citations and dates of birth omitted; footnotes in original).

On June 25, 2021, the juvenile court held a hearing to determine if Children should be adjudicated dependent and Father committed child abuse against Decedent. Following the hearing, the juvenile court adjudicated Children dependent and made a finding of child abuse pursuant to 23 Pa.C.S.A. § 6303(b.1)(7) and (9). Father filed a timely notice of appeal on July 12, 2021. That same day, Father filed his concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On November 2, 2021, the juvenile court filed its Rule 1925(a) opinion.

Father raises the following issues for our review:

1. Did the [juvenile] court err by making a finding of child abuse as to [Father] where "clear and convincing evidence" was not provided, that [Father], either directly or by neglect caused injuries to the child, as required by 42 Pa.C.S.A. § 6381(a) and 23 Pa.C.S.A. § 6303?

2. Did the [juvenile] court err in determining that aggravated circumstances exist against [Father] as DHS failed to prove by "clear and convincing evidence" that Father either directly or by neglect caused the child's injuries, as required by 42 Pa.C.S.A. § 6381(a) and 42 Pa.C.S.A. § 6302?

3. Did the [juvenile] court err or abuse its discretion by making a finding of dependency as to Father as DHS failed to prove by "clear and convincing evidence" that the child was a dependent child, as required by 42 Pa.C.S.A. § 6302(1)?

4. Did the [juvenile] court err or abuse its discretion by failing to provide Father with an in person hearing instead of a virtual hearing thus

- 4 -

> violating [Father's] due process rights to fundamental fairness?

Father's brief at 6.

For the purposes of our review, we elect to address Father's claims in a slightly different order than presented in his appellate brief. Father first argues that the juvenile court abused its discretion in finding that he committed "child abuse" with respect to Decedent under Sections 6303(b.1)(7) and (9) of the CPSL. *Id.* at 13-15.

Section 6303 of the CPSL defines "child abuse," in relevant part, as follows:

> **(b.1) Child abuse.--**The term "**child abuse**" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> . . . .
>
> (7) Causing serious physical neglect of a child.
>
> . . . .
>
> (9) Causing the death of the child through any act or failure to act.

23 Pa.C.S.A. § 6303(b.1)(7), (9).

"Serious physical neglect" is defined by the CPSL as the "repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities." *Id.* at § 6303(a).

A finding of "child abuse" under Section 6303(b.1) must be proven by clear and convincing evidence. *In re L.V.*, 209 A.3d 399, 417 (Pa.Super. 2019) (citations omitted). "Clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted, provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

*In the Interest of J.M.*, 166 A.3d 408, 423 (Pa.Super. 2017) (citation omitted).

Lastly, we note that the CPSL adopts the definitions of intentionally, knowingly, and recklessly outlined in our Crimes Code. *See* 23 Pa.C.S.A. § 6303(a).

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

In the instant matter, the juvenile court found that Father acted recklessly when he left Decedent, a four-year-old child who required

specialized medical care, in the care of his ten-year-old brother, ultimately resulting in Decedent's death. Juvenile court opinion, 11/2/21 at 14. The juvenile court stated:

> This case is so clear and so convincing to the Court that it is an overwhelming case of child abuse, not only that resulted in the death of [Decedent], but it is child abuse versus the 10-year-old [N.B.-W.], being left alone for five and a half hours to care for such a medically needing sibling.
>
> It's just beyond unconscionable. And five and a half hours – this child should not have been left five and a half minutes. The parents knew the lifetime needs of this child.
>
> . . . .
>
> And leaving [Decedent] with Father for 10 minutes, after what I heard of his testimony, would be completely reckless.
>
> [Father's totally incapable – I don't know how he takes care of himself, let alone being responsible for children in a home. It's just shocking to the conscience what happened here.
>
> . . . .
>
> [Decedent] died by neglect. And what a life this child had. It was horrible. And to be abandoned, basically, and left with a 10-year-old sibling is just frightening.

Notes of testimony, 6/25/21 at 128-129. Following our careful review, we agree.

The record supports a finding that Father caused "serious physical neglect" to both N.B.-W and Decedent under Section 6303(b.1)(7) of the

CPSL, and that Father's recklessness ultimately caused Decedent's death, pursuant to Section 6303(b.1)(9).

At the June 25, 2021 hearing, DHS investigator Tierra Dunn testified that her investigation following Decedent's death revealed that Mother was hospitalized between September 6 to October 9, 2020 due to complications with her pregnancy and Father was working eight-hour shifts. Notes of testimony, 6/25/21 at 55, 61-62, 65. During this time period, Father left Decedent in the care of his ten-year-old brother, N.B.-W., for 10 to 12 hours a day, and up 3 to 4 days a week. *Id.*

Dunn also testified that Father acknowledged that he did not feed, change, or provide Decedent with medication because he didn't feel comfortable and was not trained to do so. *Id.* at 73, 76-77. The record reflects that on the day of Decedent's death, Father left him home alone with N.A.-B. around noon to pick up Mother from the hospital but did not return until more than five hours later, after he and Mother went to a restaurant for dinner. *Id.* at 64, 66.

Dr. Renee Turchi, an expert in pediatric medicine and the Medical Director of the Center for Children and Youth with Special Healthcare Needs at St. Christopher's Hospital for Children, testified that Decedent suffered from a number of severe medical conditions that required around-the-clock monitoring by trained caregivers. *Id.* at 12-19. Specifically, Dr. Turchi noted that Decedent had a history of hydrocephalus, microcephaly, seizure disorder,

encephalomalacia, chronic lung disease, developmental delays, and cerebral palsy. *Id.* Dr. Turchi noted that Decedent also required the use of a gastrostomy tube to be fed and was non-verbal. *Id.* Dr. Turchi opined that it was inappropriate to expect a ten-year-old child to provide this type of specialized medical care and supervision. *Id.* at 24-25.

Dr. Lindsay Simon, an Associate Medical Examiner for the Philadelphia Medical Examiner's Office and expert in determining cause of death, testified that she performed an autopsy on Decedent on October 10, 2020. *Id.* at 32, 34-35. Dr. Simon concluded from her autopsy that Decedent's cause of death was aspiration pneumonia related to his cerebral palsy, and stated that this would have taken "days, if not a week or more" to result in death. *Id.* at 41, 48. Dr. Simon opined that leaving Decedent in the primary care of a ten-year-old for an extended period of time would have been the type of neglect that could have contributed to Decedent's death and emphasized that "is not a standard of medical care." *Id.* at 43.

The juvenile court found the testimony of DHS's witnesses credible and elected not to believe Father. *See id.* at 127. We decline to disturb these findings.

Accordingly, we discern no abuse of discretion on the part of the juvenile court in concluding that Father committed "child abuse" pursuant to Section 6303(b.1) of the CPSL.

Father's next argues that the juvenile court erred and/or abused its discretion in adjudicating D.A.-S. dependent.[2]  Appellant's brief at 17.

Our standard of review in child dependency cases is as follows:

> In reviewing an order in a dependency matter, our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re Interest of N.B***., 260 A.3d 236, 245 (Pa.Super. 2021) (citation and internal quotation marks omitted).

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375.  The Juvenile Act defines "dependent child," in relevant part, as follows:

> **"Dependent child."**  A child who:
>
> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

---

[2] The record reflects that Father is the biological father of D.A.-S. only.

In order to adjudicate a child dependent, the juvenile court must determine that the above definition has been met by clear and convincing evidence. *In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013). The determination "of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d 614, 619 (Pa.Super. 2002) (*en banc*).

Instantly, the juvenile court adjudicated D.A.-S. dependent based upon Father's "present inability" to provide eight-month-old D.A.-S with proper parental care and control, referencing Father's failure to provide proper care to D.A.-S's four-year old sibling, Decedent, which ultimately resulted in his death. Notes of testimony, 6/25/21 at 128-129; *see also* juvenile court opinion, 11/2/21 at 13-14. Following a thorough review of the record, we find no abuse of discretion in this regard.

As discussed, the record reflects that there was clear and convincing evidence that Decedent was the victim of child abuse after Father left ten-year old N.B.-W alone to care for him 10 to 12 hours a day and up to three to four days a week, with full knowledge of his substantial medical needs.

This Court has long recognized that a parent's failure to provide proper parental care and control to a child may necessitate an adjudication of dependency for the child's siblings where the parental failure places the

siblings at risk of physical, mental or emotional harm. *In re G.T.*, 845 A.2d 870, 874 (Pa.Super. 2004). Likewise, a finding of child abuse against one sibling may support a juvenile court's adjudication of dependency for another sibling, even if they were not the victim of abuse themselves. *In re R.P.*, 957 A.2d 1205, 1213 (Pa.Super. 2008).

Based on the foregoing, the record supports the juvenile court's conclusion that D.A.-S. is presently "without proper parental care or control…." 42 Pa.C.S.A. § 6302. Father's challenge to the contrary is clearly without merit.

Father next argues that the juvenile court erred and/or abused its discretion by finding that aggravated circumstances existed in this case. Father's brief at 16. We disagree.

The Juvenile Act defines the term "aggravated circumstances," in relevant part, as circumstances in which "[t]he child or **another child of the parent has been the victim of** physical abuse resulting in serious bodily injury, sexual violence or **aggravated physical neglect by the parent.**" 42 Pa.C.S.A. § 6302(2) (emphasis added). "Aggravated physical neglect," in turn, is defined by the Juvenile Act as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id.* at § 6302.

> [T]his Court has recognized that a [juvenile] court need not find the existence of aggravated circumstances as to a particular party; rather, it merely must determine whether they are present in

- 12 -

> the case. This is ... because the focus is not on the
> rights of the [p]arents; instead, the children's safety,
> permanence, and well-being take precedence.

*Int. of L.V.*, 209 A.3d at 418 (citation and internal quotation marks omitted).

Here, our review of the record reveals that the evidence presented during the dependency hearing clearly supported the juvenile court's finding of aggravated circumstances under Section 6302(2). *See* notes of testimony, 6/25/21 at 129. It is undisputed that D.A.-S's brother, Decedent, was the victim of aggravated physical neglect after he was left by Father without proper parental care and supervision for extended periods of time, culminating in Decedent's death. *Id.* at 66-68. Accordingly, no relief is due.

In his final claim, Father contends that the juvenile court violated his due process rights by failing to conduct an in-person adjudicatory hearing instead of a virtual hearing. Father's brief at 18-20.

Our review of Father's brief reflects that he has failed to cite to the place in record where specifically objected to the virtual hearing or requested an in-person proceeding, and our independent review has found none. Accordingly, Father has waived this claim. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Int. of L.V.*, 209 A.3d at 418 (stating, "[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." (citation omitted)).

For all the foregoing reasons, we affirm the June 25, 2021 order of the juvenile court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2022