J-S12013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L., A MINOR | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2989 EDA 2025 |

Appeal from the Order Entered October 27, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-DP-0000041-2025

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:               **FILED APRIL 28, 2026**

J.L. ("Father") appeals from the order adjudicating A.L. ("Child") dependent. He argues the court abused its discretion in finding Child was a dependent child. We affirm.

The Bucks County Children and Youth Social Services Agency ("the Agency") filed a dependency petition in August 2025 (the "Petition"). After a two-day hearing in September and October 2025, the court adjudicated Child dependent and transferred legal and physical custody of Child to the Agency. Child was born in April 2024 and, at the time of the adjudication, she was approximately 18 months old. The court made the following factual findings:[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Following the issuance of the order, Mother and Father filed a petition to reconsider the court's factual findings. The court granted reconsideration and subsequently issued the findings quoted in this Memorandum.

a. The family consists of [A.D. ("Mother")], [Father], and [Child].

b. The Agency has been working with the family since April 2024, because both parents have significant mental health and substance abuse problems, because there have been repeated instances of domestic violence, [and] because each has faced criminal charges related to the foregoing.

c. Since April 2024, the parents have had a substantial number of police contacts between the Yardley Borough, Lower Makefield, and Radnor Township Police Departments as a result of domestic violence.

d. Throughout Agency involvement the parents' relationship with each other has been volatile.

e. T[aylor] S[zarko], Yardley Borough co-responder, has been involved due to the repeated domestic violence incidents.

f. Among the injuries Mother suffered as a result of Father's conduct toward her (while Child was in their care) were bruises on her face and neck.

g. Mother has had frequent panic attacks, during which she is unable to talk and unable to function as a caregiver for Child.

h. Mother testified that she is diagnosed with bipolar disorder and Complex Post Traumatic Stress Disorder.

i. Mother has admitted that she has snorted her Xanax because it helps her more quickly that way.

j. Father has admitted that he has resorted to alcohol when under stress and as a way of self-medicating his mental health problems.

k. Father indicated that he has been diagnosed with depression but he is not interested in seeking mental health treatment.

l. Father has repeatedly been observed smelling of alcohol and acting aggressively, including while Child is in his care.

m. Mother has been involuntarily committed under Section 302 of the PA Mental Health Procedures Act multiple times throughout the last year and a half.

n. In March 2025, Father was arrested on charges of Conspiracy-Simple Assault, Criminal Attempt-Criminal Mischief-Damage Property, Conspiracy-Harassment-Subject Other to Physical Contact, Conspiracy-Disorderly Conduct Engage In Fighting, which he incurred on February 21, 2025, and Mother was the victim.

o. On March 11, 2025, the Court entered a Temporary Protection from Abuse Order (PFA), protecting Mother, Child, the maternal grandfather, [J.M.], and the maternal grandmother, [L.M.], from Father.

p. The Court observed Father to have unresolved anger management and impulse control problems.

q. On March 19, 2025, the Court entered a three (3) year final PFA Order, protecting Mother, Child, the maternal grandfather, and the maternal grandmother from Father; the Order expires on March 20, 2028.

r. Father was hospitalized for inpatient psychiatric treatment around the time of the March 2025 PFA order.

s. In late March 2025, the Yardley Borough police arrested Mother following a domestic incident between Mother and the maternal grandmother, [L.M.]. Maternal grandmother was the alleged victim.

t. Mother was charged with simple assault, resisting arrest, disorderly conduct, harassment, and public drunkenness and was subsequently incarcerated at Bucks County Correctional Facility.

u. Mother was given a bail condition that she was not to have contact with the maternal grandmother, which was later changed to no adverse contact.

v. Neither parent has, over an extended period of time, consistently cooperated with Agency efforts to keep Child safe.

w. Throughout the Agency's involvement, the family has been on several Safety Plans due to parental substance abuse and mental health concerns.

x. The family, by often violating the Safety Plans, has thwarted the Agency's attempts to keep Child safe.

y. Maternal Grandfather has repeatedly allowed Mother to be with Child in violation of Safety Plan requirements.

z. Yardley Borough police have repeatedly responded to calls for domestic disturbances involving the parents.

aa. Mother has acknowledged her own anger management problems.

bb. First responders have observed Mother to be visibly intoxicated, not making sense, and engaging in severe erratic behavior.

cc. In June 2025, Mother was Involuntarily Committed under Section 302 of the PA Mental Health Procedures Act.

dd. Mother has had pending charges for Endangering Welfare of Child, Simple Assault, Resisting Arrest, Harassment, and Disorderly Conduct.

ee. Following her arrest on these charges, and immediately upon her discharge from psychiatric hospitalization, Mother was incarcerated at the Bucks County Correctional Facility.

ff. On July 7, 2025, Radnor Township police responded to Paternal Grandmother's residence, where Father has been residing, because of a domestic dispute involving Father, during which Father was heavily intoxicated.

gg. On July 8, 2025, Radnor Township police were again involved, as Father was again heavily intoxicated and threatened to jump in front of a train.

hh. Father was again hospitalized for inpatient psychiatric treatment.

ii. Since his discharge from the hospital, Father has not complied with the recommendations for follow up treatment and has not engaged in any mental health treatment.

jj. Likewise, Father has not engaged in any recognized program for treating his abuse of alcohol.

kk. Father does not demonstrate an understanding of the significance of his mental health or alcohol abuse challenges.

ll. Father externalizes all responsibility and does not recognize or acknowledge that his instability and volatility pose a significant risk to the Child.

mm. The Agency's Supervisor, Leslie Honer, has repeatedly requested Father to allow the Agency to complete a home assessment, but Father has refused.

nn. Father has said that the home is not ready to be assessed.

oo. Ms. Honer asked Father to let her know when he's ready for her to see the home, but he has not done so.

pp. Father has repeatedly refused Agency-offered assistance.

qq. On or about August 1, 2025, Mother was released from the Bucks County Correctional Facility and was admitted into the Pyramid Health Facility in Dallas, Pennsylvania.

rr. Mother initially had a bail condition that prohibited contact with Child and with Maternal Grandmother; the bail condition was more recently changed to no adverse contact.

ss. During the course of the Adjudication and Disposition hearings the parents each made the case that the other parent is unfit.

tt. Mother testified about the extent of Father's violence, including that he had thrown her over a bed, stepped on her throat to the point that she couldn't breathe, and knocked her teeth out.

uu. Mother further testified that Father was always threatening to have Mother involuntarily committed and to tak[e] the baby from her.

vv. Mother received photos from Paternal Grandmother of Father's room, cluttered with "pee bottles," dirty diapers, and alcohol.

ww. Father admitted to Mother that he had screwed up in having Child at the home with Paternal Grandmother, that it's an abusive, toxic environment, and that he does not want the Child around Paternal Grandmother.

xx. Mother testified that to keep Child safe, Father's access to Child would need to be restricted.

yy. Mother also testified that at the start of the hearing, Father came over to her and said, "Look at your face. What, are you on drugs? Going to snap?"

zz. Under questioning by Father's counsel, Mother admitted to past use of heroin and meth, and to sniffing Xanax; that she has been 302'd three times since Child was born, and that she was diagnosed with post-partum psychosis.

aaa. Father testified that Child has been bruised while under Maternal Grandfather's care, and that Maternal Grandfather has been physically aggressive toward Father.

bbb. Each parent argued that the other party's parents – the Child's grandparents – have violated the supervised visitation requirements.

Findings of Fact, filed Nov. 18, 2025, at 1-4.[2]

Father appealed the order adjudicating Child dependent. He raises the following issues:

1. Did the trial court abuse its discretion and/or err as a matter of law by finding that the Agency met its burden of clear and convincing evidence that [Child was] dependent pursuant to 42 Pa.C.S. § 6302, definition (1) of "dependent child."

[2]. Did the trial court abuse its discretion and/or err as a matter of law when it found that a Protection from Abuse Order prevented Father from being immediately available despite its authority to transfer custody to a non-custodial parent when [C]hild is dependent as to the other parent.

_____

[2] This Court has reviewed the transcript and evidence and concludes the record supports the court's factual findings.

Father's Br. at 5. We will address Father's issue together.

Father maintains the Agency did not present clear and convincing evidence that Child was a dependent child as to Father. He argues the Agency did not present evidence he abused Child. He claims the evidence as to his mental health was limited to two in-patient hospital stays, in March and July 2025, that related to "situational depression." *Id.* at 8-9. He argues the Agency did not prove his mental health impacted his ability to provide proper care and control to Child. He also claims that the Agency presented no evidence to contradict his testimony that at the time of the hearing he had not had alcohol for four months.[3] Father claims that although the Agency presented information he did not let them into the home for an assessment, he had previously done so. Father also faults the trial court for relying on the PFA order. He argues the custody provisions in the order are temporary and the Agency did not present evidence that Child had been a victim of his abuse. He claims that "[b]ut for Mother's actions excluding Father from the Child's life, Father was readily and immediately available to provide proper parental care and control." *Id.* at 11.

We review orders entered in dependency cases for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We must accept the trial court's factual findings and credibility determinations if they are

---

[3] We point out that Father was found intoxicated on July 8, 2025, and the hearing where he testified was on October 22, 2025. N.T., Sept. 22, 2025, at 22-23; N.T., Oct. 22, 2025, at 7-33.

supported by the record, but we are not required to accept its inferences or conclusions of law. ***Id.***

A "dependent child" includes a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302 ("Dependent child"). Thus, a child will be declared dependent only if the child "is presently without proper parental care and when such care is not immediately available." ***In re A.B.***, 63 A.3d 345, 349 (Pa.Super. 2013) (citation omitted). "This Court has defined 'proper parental care' as 'that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.'" ***Id.*** (citation omitted).

The petitioner must demonstrate by clear and convincing evidence that a child meets the statutory definition of a dependent child. ***In re G.T.***, 845 A.2d 870, 872 (Pa.Super. 2004). Clear and convincing evidence is evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." ***In re A.B.***, 63 A.3d at 349 (citation omitted).

The trial court concluded that the Agency presented clear and convincing evidence that Child was without proper parental care and control. It pointed to the domestic disputes between family members that resulted in police involvement and criminal charges, Mother's and Father's mental health-

related hospitalizations and struggles, and their inability to prioritize providing

appropriate care for Child without Agency involvement:

> The [c]ourt concluded that the Agency had met its burden of showing by clear and convincing evidence that Child was without proper parental care and control. It was notable that the Parents could not agree on anything, including the safety of Child with each other and each other's family. They were unable to communicate with each other and prioritize the needs and best interests of Child. Furthermore, the [c]ourt considered the prognostic evidence in order to make some prediction about the future based on what has transpired in the past. With that, the [c]ourt factored in the number of repeated incidents requiring police involvement and the need for mental health-related hospitalizations—which had occurred with such frequency and recency that the [c]ourt concluded that Parents were not currently in a position to provide Child with appropriate care.

> . . .

> The [c]ourt viewed the evidence as a whole in concluding that Parents were not immediately available to provide proper parental care and control. No one fact alone was determinative. The [c]ourt came to its conclusion based on the recent history of domestic disputes between the members of the family which had resulted in police involvement and criminal charges, both Parents' mental health-related hospitalizations and struggles, and the observation that the Parents were unable to prioritize providing the appropriate care for Child without Agency involvement.

> The level of volatility between the two sides of the family, to the extent that Mother and Father, at times, were unable to appropriately conduct themselves in the courtroom, further reinforced the appropriateness of the dependency finding. The [c]ourt, in effect, agreed with each parent's assertion that the other parent was unable to provide proper parental care and control.

Trial Ct. Op., Dec. 15, 2025 at 10-14 (citations to transcript omitted) (emphasis omitted).[4]

Regarding the PFA order, the trial court concluded it could not ignore the PFA order then in effect against Father and under which Child was a protected party. It also found that Father was volatile, had criminal proceedings and mental health hospitalizations, and failed to follow through with treatment for his mental health needs:

> Here, the [c]ourt concluded that Father was not immediately available based, in part, on the conditions of the PFA Order, as it would be inappropriate to ignore a prior judicial determination regarding Child's safety. Further, the [c]ourt was convinced that Father's hair-triggered volatility, his criminal and mental health hospitalization histories, and his failure to follow through with any treatment of his mental health needs evidenced the lack of immediate availability to provide proper care for Child. While the [c]ourt might not rule out that it could, theoretically, have the authority to override a PFA restriction, there was no basis to explore such an action under the facts prescribed.

*Id.* at 15.

The trial court did not abuse its discretion in finding Child to be a dependent child. The record supports the trial court's findings of fact, and it did not err in finding Father unable to presently provide parental care for Child where he has not established he is managing his mental health needs and

_____

[4] The trial court also found the Agency met its burden of making reasonable efforts to prevent Child from coming into care and offering services and that it was in Child's best interest to be in the legal and physical custody of the Agency while remaining placed in the home of Maternal Grandfather. Trial Ct. Op. at 11.

alcohol dependency, he has not permitted the Agency to assess his home, and, pursuant to the PFA order, he is permitted only supervised visitation with Child.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026